CHURCH OF SCIENTOLOGY OF CALIFORNIA, a Nonprofit California Corporation, Plaintiff-Appellant,

v.

James E. ADAMS, Elaine Viets, Pulitzer Publishing Co., Inc., et al., Defendants-Appellees.

No. 75–1954.

United States Court of Appeals, Ninth Circuit.

Oct. 23, 1978.

Richard M. Coleman (argued), Los Angeles, Cal., for plaintiff.

Theodore B. Olson (argued), Gibson, Dunn & Cruther, Los Angeles, Cal., for defendants.

Before CHOY and KENNEDY, Circuit Judges, and PALMIERI,* District Judge.

KENNEDY, Circuit Judge:

The Church of Scientology of California (California Church), a California corporation, appeals from a judgment dismissing its action for libel. The suit is against the Pulitzer Publishing Co., publisher of the *St. Louis Post-Dispatch* newspaper, and James E. Adams and Elaine Viets, principal authors of the newspaper articles in question.[1]

---

* Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

The district court dismissed the action against appellees for lack of personal jurisdiction and ruled, alternatively, that the complaint fails to state a claim upon which relief may be granted. We hold that the trial court was correct in concluding that it did not have jurisdiction over the appellees, and it is not necessary for us to address the district court's alternative ruling.

The Post-Dispatch published a series of five articles about Scientology on March 3 through 7, 1974. The articles discussed Scientology generally and made particular reference to the Church of Scientology of Missouri. In preparing the articles, Adams and Viets interviewed local leaders of the Missouri Church of Scientology and former members of that Scientology branch as well as former staff members of the Toronto Scientology office. The articles were written in St. Louis and at no time did the reporters enter California for research or any other purpose. At the suggestion of a staff member of the Missouri Church, the reporters did interview Emily Watson, who was connected with a national Scientology office located in California, while she was visiting in St. Louis. No reference to the California Church or any of its individual members was made in the articles.

Two months after the articles were published, the California Church filed this action in a California superior court. Notwithstanding the lack of any reference to the California Church in the articles, the complaint attempted to establish that they pertained to the appellant. We summarize the complaint's allegations of libel, which were specific and lengthy, as follows:

(1) that Scientology is not a religion but rather a commercial enterprise and that appellant is a commercial business;

(2) that appellant exploits individuals for money and confers no benefits of a spiritual, religious, or other nature on its members;

---

1. Eric, Nancy, and John McLean were also named as defendants, but the action against them was dismissed for lack of prosecution by order of the district court on March 25, 1975, and appellant does not contest that ruling.

(3) that appellant is operated solely for the personal and financial aggrandizement of L. Ron Hubbard, the founder of Scientology, at the financial and emotional expense of its members;

(4) that appellant is operated by "a group of paramilitaristic fanatics who motivate and control members by instilling a fear of reprisal, and who drive members insane and harass members" who leave the organization (quoting from complaint).

Further, it was alleged that appellant was defamed by reason of untruthful and highly derogatory remarks about Scientology's founder, L. Ron Hubbard.

The appellees filed a motion to dismiss for lack of personal jurisdiction, and the motion was heard in the federal district court to which the action had been removed. In contesting the motion, the California Church did not dispute the facts adduced by appellees as to their respective contacts with the State of California. It is thus agreed that Pulitzer makes no attempt to market the *Post-Dispatch* in California. Circulation in California to mail subscribers and to a few independent news dealers amounts to 0.04% of the newspaper's total circulation. Approximately 156 copies of one of the allegedly libelous publications and 121 copies of each of the other articles reached California in this manner. The *Post-Dispatch* does not direct any advertising whatsoever to California readers, but California companies do advertise in the paper to reach markets in Missouri and elsewhere. It is agreed that 2.91% of the newspaper's general advertising revenue is from this source. In addition, Pulitzer owns approximately 17% of Million Market Newspapers, Inc., an advertising firm licensed to do business in California, which solicits advertising for Pulitzer and other newspaper publishers by providing potential advertisers with information about the newspapers and their market areas. Finally, the reporters are residents of St. Louis County, Missouri, and neither has been in the State of California during the last fifteen years.

In ruling on appellees' motion to dismiss for lack of personal jurisdiction, it was correct for the district court to apply California law. California law permits state courts to exercise personal jurisdiction over nonresident defendants to the full extent permitted by the Constitution.

A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.

Cal.Civ.Proc.Code § 410.10 (West 1973). The California courts have ruled that this statute permits state courts to exercise the broadest possible jurisdiction, limited only by constitutional considerations. *Sibley v. Superior Court of Los Angeles County,* 16 Cal.3d 442, 128 Cal.Rptr. 34, 546 P.2d 322 (1976), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1978). "Thus, the usual two-step analysis [in inquiries respecting personal jurisdiction] collapses into a single search for the outer limits of what due process permits." *Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir. 1978).

The California Church concedes that Pulitzer and the individual appellees do not have such substantial contacts with the forum that they are present there for purposes of defending against all types of actions. *See Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). If a defendant is not present for all purposes in the forum, due process requires that jurisdiction be based on contacts which have some nexus to the cause of action alleged. *Forsythe,* 576 F.2d at 782. The Supreme Court has described "the relationship among the defendant, the forum, and the litigation" as "the central concern of the inquiry into personal jurisdiction." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

We dispose at the outset of the claim that Pulitzer's revenues from California advertisers are a sufficient basis for jurisdiction in this case. The advertising revenues are unrelated to appellant's action for libel. Pulitzer earned that revenue by giving Cali-

fornia advertisers an opportunity to reach persons outside of California. Those contacts with California companies are not evidence of an intent to publish in California or of an effort to reach readers there.

■ Pulitzer's relationship to Million Market Newspapers, Inc. is also an insubstantial basis for jurisdiction. Pulitzer owns only seventeen percent of the stock in the California company and no parent-subsidiary relationship exists. Even in cases where the contacts of a parent or subsidiary corporation are sufficient to subject it to personal jurisdiction, we recognize that the activities of one related corporation are irrelevant to the issue of jurisdiction over the other, so long as a separation between the corporations has been maintained. *Uston v. Grand Resorts, Inc.,* 564 F.2d 1217, 1218 (9th Cir. 1977). Nothing in the record indicates that the California advertising corporation is not operated wholly independently of Pulitzer.

The sole contact between appellees and the forum which is relevant to our jurisdictional inquiry is thus the distribution in the forum of approximately 150 copies of each allegedly libelous article.

■ It is the "quality and nature of the defendant's activity," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), in relation to the cause of action alleged which determines whether or not the exercise of personal jurisdiction comports with "fair play and substantial justice," *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Where there have been commercial dealings between the parties, jurisdiction in large part depends upon whether consensual activity potentially touched the forum state, as this indicates whether or not there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum," *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240. *See, e. g., Forsythe v. Overmyer,* 576 F.2d 779 (9th Cir. 1978). In an action based on tort, however, the inquiry necessarily extends beyond whether there has been submission to the sovereignty of the forum by some consensual act, and it requires an examination of the expected consequences of the defendant's conduct. In such cases we have held that the demands of due process are satisfied when jurisdiction is asserted over a defendant who "purposefully sets his product or his designs into the stream of commerce, knowing or having reason to know that they will reach the forum state and that they create a potential risk of injury." *Jones Enterprises, Inc. v. Atlas Service Corp.,* 442 F.2d 1136, 1140 (9th Cir. 1971); *accord, Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231, 235 (9th Cir. 1969).

■ In products liability cases, this determination resolves into an inquiry as to whether the defendant could reasonably foresee that his product, when injected into the stream of commerce, would come to rest in the forum. *See, e. g., Duple Motor Bodies, supra; Buckeye Boiler Co. v. Superior Court of Los Angeles County,* 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969) (en banc); *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). It is assumed in such cases, indeed it is so almost by definition, that the locus of the risk of injury is the situs of the product. Physical presence of the product within the forum state is thus the critical factor in conferring jurisdiction, and the due process inquiry turns in large part on whether it was foreseeable that the defective product would be introduced into the state. In a libel case, however, we do not think the likelihood that an offending publication will enter a forum is a fair measure of the reasonableness of the exercise of jurisdiction over a publisher. The nature of the press is such that copies of most major newspapers will be located throughout the world, and we do not think it consistent with fairness to subject publishers to personal jurisdiction solely because an insignificant number of copies of their newspapers were circulated in the forum state. In a defamation case, therefore, the appropriate jurisdictional analysis should be to determine whether or not it was foreseeable that a risk of injury by

defamation would arise in the forum state. Certain of our other tort cases which do not involve product liability or conduct causing personal injury are consistent with this approach. *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 640–44 (9th Cir. 1966); *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784 (9th Cir. 1977).

■ While it was reasonably foreseeable that the allegedly libelous articles would find their way to California, we think it was not reasonably foreseeable that any substantial risk of defamation would arise from their circulation in that state, even assuming the articles to be untrue and maliciously published. Although Pulitzer did mail the *Post-Dispatch* to regular subscribers and delivered it to some independent distributors, based on its knowledge that no more than 150 copies of the articles would find their way to California it had little reason to expect a risk of injury from defamation in that state. Under some circumstances a publisher could be held to a duty to anticipate injury to reputation from distribution of a small number of copies. For example, in *Anselmi v. Denver Post, Inc.*, 552 F.2d 316 (10th Cir. 1977), *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977), jurisdiction was predicated on distribution of an even smaller number of newspapers in the State of Wyoming, but jurisdiction was conferred in part by the fact that "when the story was written and published it was foreseeable that it would be given substantial attention within the State of Wyoming since there was more reader interest there than in any of the other states." *Id.* at 325. The action was brought by Wyoming residents who were specifically named in the allegedly libelous article, entitled "U. S. Tries to Close Up 'Wide Open' Wyoming," which carried a Wyoming dateline. Also of substantial significance in the court's analysis was that the article had been written by three reporters dispatched to Wyoming.

In the present appeal, California events were not the topic of the allegedly actionable writings, nor were California readers a principal or secondary target of the articles. No research was done in California and the articles were not written in that state. The only mention of a California resident was by way of reference to a person who spoke as a representative of the national Scientology organization. The California Church is a separate corporation, and it was not mentioned in any of the articles. The appellant is included in the discussion only to the extent that one article makes reference to "about 300 branches" of the Scientology movement in the context of discussing the St. Louis Scientology office, and to the extent that the articles concern Scientology in general.

We think it is relevant to the jurisdictional ruling, and to the issue of foreseeable risk of defamation injury, that were we to reach the merits of this case a difficult question would arise as to whether the articles were published "of and concerning" the California Church, as they must be before this action for libel will lie.[2] While it is unnecessary to make a final ruling on this

2. In California, as in most other states, an allegedly libelous statement is not actionable unless "published or spoken *concerning the plaintiff.*" Cal.Civ.Proc.Code § 460 (West 1973) (emphasis supplied); *Harris v. Curtis Publishing Co.*, 49 Cal.App.2d 340, 121 P.2d 761 (1942); *see generally New York Times Co. v. Sullivan*, 376 U.S. 254, 288, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). As a corollary of this requirement, California courts have held that

general language against a class or group of people cannot constitute libel. Where a group is very large and nothing that is said applies in particular to the plaintiff he cannot recover.

*Noral v. Hearst Publications, Inc.*, 40 Cal. App.2d 348, 351, 104 P.2d 860, 862 (1940). Although recovery may be allowed when suit is brought by a member of a small group where the defamation applied to all members of a group, *see, e. g., Neiman-Marcus v. Lait*, 107 F.Supp. 96 (S.D.N.Y.1952), this court has stated that "libels against groups consisting of large numbers of persons cannot satisfy the fundamental requirements of the law of libel . . . ." *Golden North Airways, Inc. v. Tanana Publishing Co.*, 218 F.2d 612, 620 (9th Cir. 1954). *Cf. Kentucky Fried Chicken of Bowling Green, Inc. v. Sanders*, 563 S.W.2d 8 (Ky.1978) (individual franchisee may not bring action for defamation where Colonel Sanders stated, *inter*

substantive issue, we think there is serious doubt that the articles refer to the appellant. That doubt bears strongly upon the risk of injury by defamation that could have been foreseen by the publisher. The few copies of the articles circulated in California, when considered in relation to the diffuse, nonspecific direction of the writings as to this California plaintiff, suggest that the publisher's relationship to the California forum with respect to this cause of action is too attenuated to support an assertion of jurisdiction over the person.

Under the circumstances, the impact in California of publication which appellees could have foreseen was not such as to put them on notice of a risk of injury. Sustaining personal jurisdiction on so tenuous a basis would be inconsistent with the notions of fairness embodied in the concept of due process.[3]

▇▇ Counsel for both parties gave considerable attention to the argument that by reason of the first amendment a newspaper is entitled to increased protection from imposition of personal jurisdiction. In *New York Times Co. v. Connor,* 365 F.2d 567 (5th Cir. 1966), the Fifth Circuit held that in order to accommodate first amendment concerns, more contacts than the requisite minimum for other tort actions are required to sustain personal jurisdiction in defamation actions against out-of-state publishers. *See also Rebozo v. Washington Post Co.,* 515 F.2d 1208 (5th Cir. 1975); *Edwards v. Associated Press,* 512 F.2d 258 (5th Cir. 1975); *Curtis Publishing Co. v. Golino,* 383 F.2d 586 (5th Cir. 1967); *Buckley v. New York Times*

*Co.,* 338 F.2d 470 (5th Cir. 1964). We do not find it necessary to reach this point in view of our holding above, but we note that the proposition advanced by the appellees is not a factor in our decision and that its soundness is open to question. The Tenth Circuit has rejected the applicability of first amendment concerns to the jurisdictional inquiry, *Anselmi v. Denver Post, Inc.,* 552 F.2d 316, 324 (10th Cir.), *cert. denied,* 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977), and the Fifth Circuit itself recently has referred to first amendment considerations as "not so much a rule as . . . a cautionary note," in the context of a jurisdictional analysis. *Edwards v. Associated Press,* 512 F.2d at 266. *See also Appleyard v. Transamerican Press, Inc.,* 539 F.2d 1026 (4th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977) (upholding the exercise of personal jurisdiction over an out-of-state magazine publisher without mention of the first amendment). We observe that first amendment protections are better developed in the context of substantive defenses on the merits rather than at the initial jurisdictional stage of a defamation proceeding. *See Buckley v. New York Post Corp.,* 373 F.2d 175 (2d Cir. 1967).

The order of the district court dismissing this action for lack of personal jurisdiction is AFFIRMED.

---

alia, that franchise gravy was "wallpaper paste.").

**3.** We are mindful that if jurisdiction properly may be exercised in California based on the articles at issue here, appellees equally may be called upon to defend against defamation charges in every state where a Scientology branch is located. This court has recognized that lawsuits can be brought on frivolous demands or groundless claims as well as on legitimate ones, and that procedural rules must be designed and appraised in the light of what is fair and just to both sides in the dispute. Interpretations of basic rights which consider only those of a claimant are not consonant with the fundamental requisites of due process.

*Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 643 (9th Cir. 1967), *quoting with approval, Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761, 766 (1961). Although "[t]he differences between individuals and corporations may . . . lead to the conclusion that a given set of circumstances establishes state jurisdiction over one type of defendant but not over the other," *Shaffer v. Heitner,* 433 U.S. 186, 204 n.19, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977), this does not mean that inconvenience and potential for harassment should not be important considerations even where a corporate defendant is concerned.