**Nancy MIRACLE, aka Nancy Greene, aka Nancy Green, Plaintiff,**

v.

**N.Y.P. HOLDINGS, INC., dba The New York Post; Cindy Adams, Defendants.**

**No. CIV.A.99–00535HG–FIY.**

United States District Court, D. Hawaii.

March 14, 2000.

---

Joseph M. Lovell, Honolulu, HI, for Plaintiff.

Peter W. Olson, Cades Schutte Fleming & Wright, Honolulu, HI, Trina R. Hunn Slade R. Metcalf, Squadron Ellenoff Ples-

**1062**

ent & Sheinfeld, New York, NY, for Defendants.

## ORDER DENYING DEFENDANT N.Y.P. HOLDINGS, INC. AND CINDY ADAMS' MOTION TO DISMISS THE COMPLAINT and DENYING DEFENDANT N.Y.P. HOLDINGS, INC. AND CINDY ADAMS' MOTION TO TRANSFER VENUE

GILLMOR, District Judge.

Plaintiff Nancy Miracle, the alleged daughter of Marilyn Monroe, brings this action against Defendants N.Y.P. Holdings, Inc. and Cindy Adams, to recover damages for the state law torts of libel per se, defamation, infliction of emotional distress, interference with contractual and business relations, and unjust enrichment. Plaintiff filed her Complaint in response to an article written by Cindy Adams, and published by the New York Post, entitled, "A Social Security mystery over Marilyn's 'daughters.'" Plaintiff alleges that Adams defamed Plaintiff in the article, and that the article has caused Plaintiff to suffer emotional and financial harm. Defendants have moved to dismiss the Complaint based on lack of personal jurisdiction. In the alternative, Defendants have moved to dismiss on the ground that venue in the District of Hawaii is improper.

### PROCEDURAL HISTORY

On May 18, 1999, Plaintiff filed a Complaint against Defendants in the Circuit Court of the First Circuit, State of Hawaii, alleging that Defendants committed the torts of libel per se, defamation, infliction of emotional distress, and interference with contractual and business relations, and unjust enrichment. On July 26, 1999, Defendants removed the case to this Court on grounds of complete diversity of citizenship.

On August 23, 1999, Defendants filed a Motion to Dismiss the Complaint, or, in the Alternative, to Transfer Venue. Plaintiff filed an Opposition to Defendants' Motion on October 14, 1999. Defendants filed a Response on October 28, 1999.

The motion came on for hearing before the Court on November 8, 1999. After careful consideration of the record, pleadings, the parties' arguments, and the governing law, the Court DENIES Defendants' motion, for the reasons set forth herein.

### STATEMENT OF FACTS

Plaintiff's Complaint in this case stems from a column written by Defendant Cindy Adams and published in the New York Post on November 10, 1997. Adams, in her column titled, "A Social Security mystery over Marilyn's 'daughters'," discusses whether Plaintiff has been collecting the social security benefits of Marilyn Monroe. The column begins by setting forth the background of Plaintiff's claim that she is the daughter of Marilyn Monroe. (Exh. 1 to Plaintiff's Opp.) The article states that Plaintiff "lived in Hawaii." The column then goes on to discuss the social security benefits issue. Specifically, the column discusses the fact that an unidentified woman from Florida placed a telephone call to the Social Security Administration, claimed to be Monroe's daughter, and inquired about receiving Monroe's social security benefits. According to the column, the woman answering the telephone at the Social Security Administration informed the caller that Nancy Greene had been receiving Monroe's social security benefits. (*Id.*) The article concludes by suggesting that Plaintiff, "some blonde from Hawaii," collected Marilyn Monroe's social security benefits.

Plaintiff, in her Complaint, alleges that in the past she "has claimed to be the daughter of Marilyn Monroe." (Complaint ¶ 9.) Plaintiff also alleges that she is the "Nancy Greene" referred to in the column. Plaintiff takes issue with a number of statements made by Adams in the column about Nancy Greene. In particular, Plaintiff alleges that she was defamed by the statements that identify her as "an unmanicured looking blonde who lived in Hawaii," a "disheveled aging blonde," and

"nuts." (Complaint ¶ 15.) Plaintiff also alleges that she was defamed by the following statement made in the column:

> So, we're saying here that some blonde from Hawaii who claims she's the love-child of Monroe's youth—whether yes or no—whether so or not—somehow proved it sufficiently to have collected Marilyn's Social Security benefits for years?
>
> Hellooooo-oo is anyone out there? Any wonder Social Security is in such a mess?

(Complaint ¶ 18). According to Plaintiff, this section of the column wrongfully imputes to her the crime of social security fraud.

The New York Post newspaper (the "Post"), which published the article, is a daily and Sunday newspaper that is distributed primarily in the New York City metropolitan area. (Affidavit of Ernie Rota, August 19, 1999, ¶ 2.) On the date the column was published, two copies of the Post were sold by subscription in the state of Hawaii. There were no copies of the Post sold on newsstands in Hawaii. (*Id.*) At the time the column at issue was published, the Post's total daily sales, including newsstand sales and subscriptions, amounted to 431,639. (*Id.*) Defendants allege that the Post neither solicits subscriptions in the state of Hawaii nor derives substantial income from sales in Hawaii. (*Id.* ¶ 3.)

Adams, the author of the column, resides in New York. Adams states in her Affidavit that, in writing the story, she did not contact any persons in Hawaii or go to Hawaii for any purpose. (Affidavit of Cindy Adams, August 19, 1999, ¶¶ 3,4.) Adams also alleges in her Affidavit that all editors of the column are located in New York. (*Id.* ¶ 9.)

Plaintiff, on the other hand, alleges that she has been a resident of Hawaii for almost 13 years. Plaintiff further alleges that she has suffered public ridicule and contempt in the state of Hawaii, and has lost out on lucrative business opportunities in Hawaii, due to the statements made about her in the column. (Complaint ¶¶ 20–22.) As a result of the alleged defamation, Plaintiff filed the instant action against Defendants. In her Complaint, Plaintiff alleges the following state law causes of action: (1) libel per se, (2) defamation, (3) tortious infliction of emotional distress, (4) tortious interference with contractual and business relations, (5) unjust enrichment, and (6) punitive damages.

## STANDARD OF REVIEW

A motion to dismiss will be granted where there is a lack of jurisdiction over the person. Fed.R.Civ.P. 12(b)(2). Once the defendant moves to dismiss and presents evidence disputing personal jurisdiction, the burden shifts to the plaintiff to make a prima facie showing via admissible evidence that personal jurisdiction exists. *See Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995); *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1284–1285 (9th Cir.1977);[1] *see also Alvarez v. Aircraft Modular Products, Inc.,* 949 F.Supp. 1470, 1472–1473 (D.Haw.1996) (plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction").

## ANALYSIS

### I. Personal Jurisdiction

Defendants argue that the Court lacks personal jurisdiction over them because Defendants have insufficient contacts with the state of Hawaii in this action. Specifi-

---

**1.** A motion to dismiss for lack of personal jurisdiction may be resolved on the basis of declarations and discovery materials. *See Data Disc.,* 557 F.2d at 1285. A court may also conduct a full evidentiary hearing on the issue. If the court does so, the plaintiff must establish the requisite jurisdictional facts by a preponderance of the evidence. *Id.* at 1289 n. 5. The Court determines that for the purposes of the instant motion it is unnecessary to conduct a hearing.

cally, Defendants contend that their only connection to Hawaii is the fact that two copies of the Post were sold in Hawaii and the fact that the column mentions that Plaintiff "lived" in Hawaii and is "from" Hawaii. The Court is not persuaded by Defendants' argument. The Court determines it has personal jurisdiction over Defendants in this action because Defendants have sufficient contacts with the state of Hawaii.

Although the defendant is the moving party on a Rule 12(b)(2) motion to dismiss, the plaintiff is the party who invokes the court's jurisdiction and thus bears the burden of proof on the necessary jurisdictional facts. *See Flynt Distributing Co., Inc. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir.1984).

█ A federal court's exercise of in personam jurisdiction over a nonresident defendant turns on two considerations: 1) whether an applicable state rule or statute potentially confers jurisdiction over the defendant; and 2) whether assertion of such jurisdiction accords with constitutional principles of due process. *See Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir.1977). Hawaii's long-arm statute, Hawaii Revised Statutes § 634–35, "expand[s] the jurisdiction of the State's courts to the extent permitted by the due process clause of the Fourteenth Amendment." *Cowan v. First Insurance Co. of Hawaii, Ltd.,* 61 Haw. 644, 649, 608 P.2d 394 (Haw.1980) (footnote omitted). Hawaii's statutory limitations upon jurisdiction are thus coextensive with the outer limits of due process under the state and federal constitutions. *Id.* The issue the Court must address, therefore, is whether the requirements of due process are satisfied by the Court's exercise of personal jurisdiction over Defendants. *See Panavision International, L.P. v. Toeppen,* 141 F.3d 1316, 1320, (9th Cir.1998).

Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction. If the defendant is domiciled in the forum state or if his activities there are "substantial, continuous and systematic," a federal court can exercise "general" personal jurisdiction over the defendant under the state's long-arm statute. *Id.* at 1320 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Plaintiff does not contend that Defendants have sufficient contacts with Hawaii to subject them to general jurisdiction in this state.

█ If a nonresident defendant's contacts with the forum state do not qualify as "continuous and systematic," a federal court may still exercise "specific" jurisdiction over claims related to his activities or contacts there. Specific jurisdiction requires that: (1) the defendant have purposefully availed himself of the privilege of conducting activities in the forum, (2) the claim have arisen or resulted from the defendant's forum-related activities, and (3) exercise of jurisdiction be reasonable. *See id.* at 1320.

### A. *Purposeful Availment*

The touchstone of the purposeful availment factor is whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Gordy v. Daily News, L.P.,* 95 F.3d 829, 832 (9th Cir.1996) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The requisite connection need not involve physical entry into the forum. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

█ In the instant case, the jurisdictional facts are not disputed. The Post sold two subscriptions of the paper in Hawaii when Adams' column was published. In the column, Adams discussed Plaintiff's claim that she is the daughter of Marilyn Monroe, and stated that Plaintiff had received the social security benefits of Marilyn Monroe. Adams also stated both that Plaintiff was "from Hawaii" and "lived in Hawaii." The issue before the Court is

whether these contacts are sufficient to confer specific jurisdiction over Defendants in Hawaii. Under pertinent caselaw, the Court determines that these contacts are sufficient to satisfy the purposeful availment factor.

*Gordy* is the Ninth Circuit's most recent pronouncement on the issue of personal jurisdiction in the context of a defamation case. As such, *Gordy* is particularly relevant to the issue presented here. In *Gordy*, considering facts similar to the instant case, the Ninth Circuit determined that personal jurisdiction existed. The defendant in *Gordy*, the New York Daily News ("Daily News"), published an article that contained allegedly defamatory statements about the plaintiff, Gordy, who was a resident of California. *See id.* at 831. The *Gordy* court was presented with the issue of whether the Daily News had sufficient contacts with California to establish personal jurisdiction.

The Daily News, which was based in New York, circulated greater than 99% of its newspapers within 300 miles of the New York metropolitan area. The Daily News did not contract with or employ distributors, or solicit subscriptions in California. *Id.* At the time of the case, however, a small but regular circulation of the Daily News reached California. Specifically, the Daily News circulated 13 copies of its daily edition and 18 copies of its Sunday edition to subscribers in California. *Id.* This California circulation constituted approximately .0017% of the paper's total circulation. *Id.*

The Daily News covered stories of nationwide interest, and in particular covered entertainment news. Due to its emphasis on the entertainment industry, the Daily News sent reporters to California, and also gathered news from anonymous sources and news services in California. *Id.*

The author of the article at issue in *Gordy* was a resident of New York. The author researched and wrote the article in question in New York. Before the publication of the article, the author authorized his associate to telephone Gordy in California to obtain his response. The associate also made telephone calls to two other persons in California while researching the story, to confirm it. *Id.*

The *Gordy* court determined that the Daily News and the author of the story had sufficient contacts with California to satisfy the purposeful availment factor of the personal jurisdiction test. In making this determination the court looked at all of the facts of the case, *see id.* at 834, but focused on two facts. First, the *Gordy* court found it particularly important that Gordy lived in California and that Gordy was, consequently, harmed in California. On this point, the *Gordy* court stated, "The prime targeting arises, of course, from the fact that Gordy is an individual who lives in California ... [i]t is reasonable to expect the bulk of the harm from defamation of an individual to be felt at his domicile." *Id.* at 833 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Second, the *Gordy* court relied on the fact that the Daily News had distributed at least 13 papers to California. *Id.* at 833–834. The *Gordy* court was not dissuaded by the small number of papers distributed. The court stated that 13 subscriptions, "even though few, is not random or fortuitous and is not even necessarily isolated." *Id.* Based primarily on the fact that some newspaper subscriptions were sold in California, and that Gordy lived in California, the *Gordy* court ultimately concluded that the defendant had purposefully availed itself of the California forum. *Id.* at 834.

In drawing its conclusion, the *Gordy* court drew heavily from the Supreme Court case of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), another case that dealt with the issue of personal jurisdiction in the context of a defamation case. In *Calder*, the plaintiff was Shirley Jones, a television actress. Jones lived and worked in California. She sued the National Inquirer, which had a circulation of 600,000 in California, claiming that the newspaper had libeled her.

Jones sued in California both the reporter who wrote the story and his editor. The reporter wrote the story in Florida but made telephone calls to California in connection with the story. Before the story was published, the article called Jones' husband in California in order to elicit comments on the article. In addition, the author frequently traveled to California on business. The editor lived in Florida and edited the story there. *Calder*, 465 U.S. at 785–786, 104 S.Ct. 1482.

The Supreme Court concluded, based on these facts, that California had jurisdiction over the two defendants. *Id.* at 790–791, 104 S.Ct. 1482. In so concluding, the Court concentrated on the fact that the "effects" of the newspaper's, author's, and editor's Florida activities were felt by Jones in California. *Id.* at 789, 104 S.Ct. 1482.[2] The Court stated,

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

2. The Supreme Court in *Calder* considered reasonableness and sufficiency of contacts together, rather than analyzing each as separate prongs of a test. *Id.* at 788–790, 104 S.Ct. 1482.

3. Plaintiff has suggested that a circulation of two newspapers in Hawaii represents a greater number of papers, in proportion to Hawaii's population, than does 13 papers in proportion to the population of California. Although the Court believes this representation is plausible, and even likely to be true, Plaintiff has presented no population figures to support the point. The Court determines, however, that the actual number of newspapers circulated in proportion to the popula-

*Id.* at 788–789, 104 S.Ct. 1482 (quoting *World–Wide Volkswagen Corp.*, 444 U.S. at 297–298, 100 S.Ct. 559) (footnote omitted).

Based on *Calder* and *Gordy*, the Court determines that the Hawaii contacts of Defendants are sufficient to satisfy the purposeful availment prong of the specific jurisdiction test. Here, the two main elements the *Gordy* court focused on are present. First, as in *Gordy*, Plaintiff here was harmed in the state where she is bringing this action—Hawaii. Second, similar to the Daily News in *Gordy*, the Post circulated copies of its paper in the state of Hawaii. Although the Post only circulated two copies of its paper, as compared to the 13 copies circulated by the Daily News in *Gordy*, the *Gordy* court did not focus on the specific number but instead downplayed the significance of the number of papers that were circulated. *See Gordy*, 95 F.3d at 833–834 (noting that 13 subscriptions, "even though few, is not random or fortuitous ....") Nothing in *Gordy* indicates to the Court that two subscriptions is insufficient to satisfy the purposeful availment prong as interpreted by *Gordy*.[3] Defendants also purposefully availed themselves of the jurisdiction of Hawaii based on the pronouncements of *Calder*. Here, as in *Calder*, the effects of Defendants' actions were felt by Plaintiff in the jurisdiction where she filed the action. This is so because Plaintiff lives in Hawaii and has allegedly experienced a great deal of harm in Hawaii.[4] These

tion is not of great significance after *Gordy*. *Gordy*, as noted above, de-emphasized the importance of having a specific number of papers in order to meet the purposeful availment prong.

4. The article does not explicitly recognize that Plaintiff currently lives in Hawaii. The article states only that Plaintiff "lived in Hawaii," and that Plaintiff is "from" Hawaii. Although these phrases are open to differing interpretations, the Court believes that one could reasonable interpret them to indicate that Plaintiff currently resides in the state of Hawaii. In any event, the language alerts readers to Plaintiff's ties to Hawaii.

facts suggest that Defendants have purposefully availed themselves of Hawaii based on the "effects" of their conduct in Hawaii. *See Calder,* 465 U.S. at 789, 104 S.Ct. 1482.

The facts of this case, when analogized to *Gordy* and *Calder,* demonstrate that Defendants, even though they have not physically entered the state of Hawaii, should reasonably anticipate being required to go to court there. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. 559. The purposeful availment prong of personal jurisdiction has been met.

Defendants contend that they have not purposefully availed themselves of this forum because significantly fewer contacts are present here than in either *Gordy* or *Calder.* The Court is not persuaded by this argument.

The Court acknowledges that Defendants' contacts with the forum where Plaintiff sued are fewer than those present in both *Gordy* and *Calder.* The Court, nevertheless, determines that Defendants have taken part in activity significant enough to have purposefully availed themselves of the forum. Although the *Calder* court looked to all the contacts, it placed great emphasis on the fact that the plaintiff lived in California and that the "effects" of the story were therefore felt by the plaintiff in California. Here, as noted already, Plaintiff lived in Hawaii when the article was published, and continues to reside there. She therefore felt the "effects" of the story in Hawaii. In *Gordy,* the Ninth Circuit's most recent case in this area, the court focused on the fact that there were at least some, although very few, papers circulated in California, and the fact that the plaintiff lived in California. Here, as in *Gordy,* there were some newspapers, although a small amount, circulated in Hawaii, and Plaintiff lives in Hawaii. Although there are fewer definitive contacts to the forum in this case, the main elements stressed by both *Calder* and *Gordy* are present.

Defendants also rely on *Church of Scientology v. Adams,* 584 F.2d 893 (9th Cir.1978), and *Demaris v. Greenspun,* 712 F.2d 433 (9th Cir.1983), to support their argument that the purposeful availment prong has not been satisfied. These cases are not persuasive. The *Gordy* court itself distinguished both cases. *Adams* involved the publication by the St. Louis Post–Dispatch of allegedly defamatory articles about the Church of Scientology. Two of these articles had circulations of 156 copies and 121 copies in California. The California Church of Scientology attempted to sue the newspaper in California. *See Adams,* 584 F.2d at 895–896. The *Adams* court, when analyzing the jurisdictional issue, determined that the relevant inquiry was "to determine whether or not it was foreseeable that a risk of injury by defamation would arise in the forum state." *Id.* at 897–898. After analyzing the relevant contacts, the court concluded that it was not foreseeable that articles at issue would cause an injury in California. Although the *Adams* court noted that it would not subject the publisher to "personal jurisdiction solely because an insignificant number of copies of their newspapers were circulated in the forum state," *id.* at 897, the court based its conclusion regarding foreseeability on the fact that the articles did not target the plaintiff. *See Gordy,* 95 F.3d at 834 (interpreting *Adams* ). Specifically, the *Adams* court determined that it was not foreseeable that the plaintiff would be injured in California because the articles at issue were not directed against the plaintiff—the California Church of Scientology—but instead were directed against the Scientology movement everywhere. On this point, the court stated that "there [was] serious doubt that the articles refer to the appellant." *Id.* at 899. In the instant case, in contrast, the article at issue clearly refers to Plaintiff. In particular, the article discusses the background of Plaintiff, her claim to be the daughter of Marilyn Monroe, and the allegation that Plaintiff collected social securi-

ty benefits as the daughter of Marilyn Monroe. *Adams* is therefore inapposite.

*Demaris* similarly does not support Defendants' argument. In that case, a California plaintiff sought to sue the Las Vegas Sun and its publisher in California for defamation. The newspaper circulated 447 weekly and 935 Sunday papers in California. *See Demaris*, 712 F.2d at 434. The *Demaris* court determined that the *Adams* foreseeability test was not met, and that jurisdiction over the defendant was therefore not proper. *Id.* In making this determination, though, the *Demaris* court pointed out that the primary impact of the story was in Nevada, not California. Specifically, the alleged libel concerned the plaintiff in his capacity as writer of exposes of criminal activities in certain cities; two of his books focused on Las Vegas, Nevada. *Id.* The primary impact of the story and the libel were in Nevada, not California. *See Gordy*, 95 F.3d at 834 (distinguishing *Demaris* based on this fact).[5] Here, in contrast, the alleged libel concerned the forum at issue—Hawaii. The article at issue states that Plaintiff lived in Hawaii, and at least some copies of the Post were circulated in Hawaii. *Demaris* does not support Defendants' argument.

Plaintiff has demonstrated that she resides in the state of Hawaii, that the Post distributed at least two subscriptions to Hawaii, and that the article at issue discussed alleged criminal activities committed by Plaintiff. Plaintiff has also alleged that she was harmed in the state of Hawaii. These contacts, although few, are sufficient under *Gordy* and *Calder* to establish that Defendants should reasonably anticipate being required to go to court in the state of Hawaii. *See Gordy*, 95 F.3d at 832. The Court determines that Defendants have purposefully availed themselves of the forum of the state of Hawaii.

**B.** *Defendants' Forum Related Activities*

The second requirement of specific personal jurisdiction is that the claim must be one which arises out of or results from the defendant's forum-related activities. *See Gordy*, 95 F.3d at 831. Defendants do not dispute that, because the libel claim "arose out of" the publication of the article, this requirement is met in this action. (Defendants' Mtn. to Dismiss at 8 n. 3.)

**C.** *Reasonableness*

Even if the first two requirements are met, in order to satisfy the due process clause, the exercise of personal jurisdiction must be reasonable. *See Panavision*, 141 F.3d at 1322. For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." *See Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487 (9th Cir.1993) (citing *Burger King*, 471 U.S. at 476–477, 105 S.Ct. 2174).

As set forth above, Defendants purposefully availed themselves of the forum of Hawaii. This placed the burden on Defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

■ In addressing the question of reasonableness, the Court must consider the following seven factors: 1) the extent of a defendant's purposeful interjection; 2) the burden on the defendant in defending in the forum; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicat-

---

**5.** In *Demaris* the Ninth Circuit stated that, "we are not disposed to carry the jurisdiction beyond the area of the paper's primary circulation." *Demaris*, 712 F.2d at 434. *Gordy* all but extinguished the precedential value of this statement when it stated, "[t]o the extent that this statement is to be read as an inflexible rule, we think that its force has been modified by the subsequent Supreme Court decisions of *Keeton* ... and *Calder* ...." *Gordy*, 95 F.3d at 834.

ing the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum. *See Core–Vent,* 11 F.3d at 1487–1488. No one factor is dispositive; a court must balance all seven. *Id.* at 1488.

Here, an analysis of each factor demonstrates that Defendants have failed to present a compelling case that jurisdiction is unreasonable. The balance of the *Core–Vent* factors tips in favor of the exercise of personal jurisdiction.

### i. *Purposeful Interjection*

The Court must first consider the degree of Defendants' interjection into the forum state. In discussing this factor, the *Core–Vent* court stated, "[e]ven if there is sufficient interjection into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Core–Vent,* 11 F.3d at 1488 (internal quotations and citations omitted).

Here, Defendants' contacts with Hawaii were attenuated. As set forth above, Defendants circulated two newspaper subscriptions in the state of Hawaii, and the article at issue discussed Plaintiff, a Hawaii resident. Because Defendants' contacts were few, this factor weighs in their favor—against the exercise of personal jurisdiction. This factor, however, does not weigh heavily in their favor given the fact that the contacts were sufficient to meet the purposeful availment prong. *See id.* at 1488 (determining that attenuated contacts weighed only slightly in the defendant's favor because the contacts, al-

though slight, were sufficient to meet the purposeful availment prong).

### ii. *Defendants' Burden in Litigating*

A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness. The Ninth Circuit has stated, however, that "unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" *Panavision,* 141 F.3d at 1323 (quoting *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 128–129 (9th Cir.1995)).

■ Defendants in this action contend that they will face significant expenses if they have to travel to Hawaii to defend the case. In particular, Defendants list a number of potential witnesses, including Adams, the author of the article, who would have to travel to Hawaii for the lawsuit. (Affidavit of Marc Kalech, August 19, 1999, ¶ 8.) Although Defendants may face a burden if this case remains in Hawaii, the Court determines that the inconvenience is not so great as to deprive Defendants of due process. As the *Panavision* court stated, "in this era of fax machines and discount air travel requiring [the defendant] to litigate in [a foreign jurisdiction] is not constitutionally unreasonable." *Panavision,* 141 F.3d at 1323 (internal quotations omitted); *see also Sinatra v. National Enquirer,* 854 F.2d 1191, 1199 (9th Cir.1988) (holding that "modern advances in communications and transportation have significantly reduced the burden of litigating in another country."). Due to the ease of travel described in *Panavision* and *Sinatra,* this factor weighs only slightly in favor of Defendants.[6]

---

**6.** *Core–Vent* notes that the Ninth Circuit's cases could be seen as inconsistent in determining whether the corresponding burden on a plaintiff in bringing the claims against the defendant in an alternate forum should lessen the impact of this factor on the overall reasonableness determination. *Compare, e.g., Pacific Atlantic Trading Co. v. M/V Main Exp.,* 758 F.2d 1325 (9th Cir.1985)("the burden on the defendant is the primary concern" and

thus the possible burden on the plaintiff does not dilute the strength of this factor), with *Sinatra,* 854 F.2d at 1199 ("the burden on the defendant must be examined in light of the corresponding burden on the plaintiff.") *Core–Vent* did not reconcile these standards. *See Core–Vent,* 11 F.3d at 1489. Although the Court will not strive to explicitly reconcile these standards today, the Court's preliminary

### iii. Sovereignty

The next factor concerns the extent to which the exercise of jurisdiction in Hawaii would conflict with the sovereignty of Defendants' state—New York. *See Panavision*, 141 F.3d at 1323. The Court determines that there would be a slight conflict with New York's sovereignty in this case.

The state of New York has shown that it has a strong interest in assuring that its citizens' freedom of speech is protected. The New York Court of Appeals has repeatedly held that Article I, Section 8 of the New York State Constitution provides broader protection for free speech than the First Amendment to the United States Constitution. *See Immuno, AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 566 N.Y.S.2d 906, 567 N.E.2d 1270 (N.Y.1991); *O'Neill v. Oakgrove Construction, Inc.*, 71 N.Y.2d 521, 528 N.Y.S.2d 1, 523 N.E.2d 277 (N.Y. 1988). This broad protection to libel defendants is evidenced, in part, by the fact that New York requires a private figure plaintiff in a libel case to demonstrate that a defendant published the allegedly defamatory statements with gross irresponsibility. *See, e.g., Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 199–200, 379 N.Y.S.2d 61, 341 N.E.2d 569 (N.Y. 1975). Hawaii courts, in contrast, require a plaintiff to demonstrate only that the defendant did not exercise reasonable care. *See, e.g., Cahill v. Hawaiian Paradise Park Corp.* 56 Haw. 522, 532–533, 543 P.2d 1356 (Haw.1975). New York's interest in providing strong free speech protection to its residents suggests that New York's sovereign interests could be harmed if Defendants are forced to defend this action in a state with a more lenient standard for libel, such as Hawaii.

This factor weighs in favor of Defendants.

### iv. Forum State's Interest

The Court next considers the state of Hawaii's interest in adjudicating the suit.

The Court determines that Hawaii maintains a strong interest in providing an effective means of redress for its residents who are tortiously injured. *See Sinatra*, 854 F.2d at 1200 (finding that the interest of the forum state is strong when plaintiff is a resident); *Panavision*, 141 F.3d at 1323 (same); *cf. Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 118–119, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (determining that there was a weak state interest because plaintiff was a non-resident of the forum state at issue). Due to Hawaii's interest in adjudicating this suit, this factor weighs strongly in Plaintiff's favor.

### v. Efficient Resolution

This factor focuses on the location of the evidence and witnesses. *See Panavision*, 141 F.3d at 1323; *Core-Vent*, 11 F.3d at 1489. This factor is no longer weighed heavily given the modern advances in communication and transportation. *See Panavision*, 141 F.3d at 1323 (citing *Caruth*, 59 F.3d at 129).

Defendants, as discussed above, contend that a number of potential witnesses, including Adams, the author of the article, would have to travel to Hawaii for the lawsuit. (Affidavit of Marc Kalech, August 19, 1999, ¶ 8.) Defendants also argue that the documentary evidence relating to the article would be located in either New York or Florida. (Defendants' Motion at 26–28.) Plaintiff, in contrast, has attested that she has identified five witnesses who live in Hawaii and who would have to travel to another jurisdiction if the action is not heard in Hawaii. (Affidavit of Nancy Miracle, October 13, 1999, ¶ 8.)

Based on the evidence presented at this juncture, it appears to the Court that more of the witnesses and evidence in this case will be located in New York. (Affidavit of Cindy Adams, August 19, 1999, ¶¶ 3–6, 9; Affidavit of Marc Kalech, August 19, 1999, ¶¶ 2, 7–9; Affidavit of Ernie Rota, August

---

analysis leads it to believe that the sixth factor—convenient relief for Plaintiff—adequately takes into account the burden on Plaintiff

for the purposes of the Court's reasonableness analysis.

19, 1999, ¶¶ 1–2; Affidavit of Slade R. Metcalf, August 13, 1999, ¶ 3; Exh. C to Defendants' Motion.) This factor therefore tips in favor of Defendants. The Court, however, places little weight on this factor in the Court's overall analysis of reasonableness. *See Panavision,* 141 F.3d at 1323.

### vi. *Convenient and Effective Relief for Plaintiff*

In analyzing this factor, little weight is given to the Plaintiff's inconvenience. *See Roth v. Garcia Marquez,* 942 F.2d 617, 624 (9th Cir.1991)(noting that "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference."). A court should place greater significance on the possibility for effective relief. *See Core–Vent* 11 F.3d at 1489.

Here, Plaintiff has attested that she will also face a significant burden if she has to bring the action in another jurisdiction. Specifically, Plaintiff states that she has identified five witnesses who live in Hawaii and who would have to travel to another jurisdiction if the action is not heard in Hawaii. (Affidavit of Nancy Miracle, October 13, 1999, ¶ 8.) The Court considers this inconvenience, but does not give it a great deal of weight.

Of more significance is the fact that Plaintiff has demonstrated that she will not be able to obtain effective relief in New York.[7] Plaintiff has demonstrated that under New York law she would be precluded by a one-year statute of limitations on libel cases from bringing the action. (Exh. 2 to Plaintiff's Opp. to Defendants' Motion.) Defendants state that Plaintiff should have realized there was a one-year statute of limitations in New York. (Defendants' Reply at 12.) Defen-

dants do not, however, argue with Plaintiff's assertion that she would be barred by the applicable statute of limitations.

Due to the fact that Plaintiff will suffer an inconvenience if she has to litigate outside of Hawaii, and the fact that she would be barred from bringing this action in New York, this factor weighs in Plaintiff's favor.

### vii. *Alternative Forum*

The plaintiff bears the burden of proving the unavailability of an alternative forum. *See Core–Vent,* 11 F.3d at 1490. Here, Plaintiff has met that burden. As discussed above, Plaintiff has demonstrated that under New York law Plaintiff would be precluded by a one-year statute of limitations from bringing the action. Defendants do not argue with Plaintiff's assertion that she would be barred by the statute of limitations. Due to the fact that Plaintiff would be barred from bringing this action in New York, this factor weighs in Plaintiff's favor.

A review of the seven factors demonstrates that this is a close case. On balance, though, the Court determines that the exercise of personal jurisdiction is reasonable. The Court acknowledges that it has determined that four of the seven factors weighed in Defendants' favor. Three of these four factors, however, tipped only slightly in Defendants' favor. Also, as discussed above, two of those four factors— Defendants' burden in litigating and efficient resolution—are no longer accorded a great deal of weight due to modern advances in travel and communications. In short, although this is a close case, Defendants have not met their burden to "present[ ] a *compelling case* that the exercise of jurisdiction would not comport with fair play and substantial justice."[8] *Core–Vent,* 11 F.3d at 1490 (emphasis added).

---

7. Defendants suggest in this case that the United States District Court for the District of New York is the proper forum.

8. The Court notes that in *Gordy,* the Ninth Circuit essentially collapsed the purposeful availment inquiry and reasonableness inquiry into a single analysis. The *Gordy* court stated, "[w]e recognize that these considerations

of reasonableness duplicate to a large degree the analysis that led us to conclude that the California contacts of Rush and the Daily News were sufficient. Such duplication is inevitable ... because the contacts with the forum are sufficient if they are such that he should reasonably anticipate being haled into court there. Considerations of reasonable-

## D. *Conclusion*

The three elements of personal jurisdiction have been met in this case. First, Defendants have purposefully availed themselves of the forum of the state of Hawaii. Second, Plaintiff's claim arose from Defendants' forum-related activities. Third, the exercise of personal jurisdiction is reasonable. The Court, accordingly, determines it proper to exercise in personam jurisdiction over Defendants. The Court DENIES Defendants' motion to dismiss for lack of personal jurisdiction.

## II. *Venue*

Defendants argue that venue in this district is improper. In the alternative, Defendants urge the Court to transfer venue to the United States District Court for the Southern District of New York. For the reasons set forth below, the Court is not persuaded by Defendants' arguments.

### A. *Venue in the District of Hawaii is proper*

Defendants argue that venue in the District of Hawaii is improper pursuant to 28 U.S.C. § 1391(a). The Court disagrees.

28 U.S.C. § 1391(a) provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Here, venue is proper under 28 U.S.C. § 1391(a)(2). Defendants do not dispute that the Post circulated newspaper subscriptions in Hawaii, where Plaintiff resides. In addition, according to Plaintiff, the harm she experienced as a result of the article occurred in Hawaii. (Affidavit of Nancy Miracle, October 13, 1999, ¶ 4). The Court has already determined that these contacts are sufficient to establish personal jurisdiction in this action because they are sufficient such that the maintenance of the suit in Hawaii "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)(internal quotations and citation omitted). The Court likewise determines that, due to the contacts with Hawaii, and particularly due to the fact that Plaintiff experienced the alleged harm in Hawaii, venue is proper under 28 U.S.C. § 1391.[9] *See, e.g., Keeton*, 465 U.S. at 780, 104 S.Ct. 1473 ("The victim of a libel, like the victim of any other tort, may choose to bring suit in any forum with which the defendant has 'certain minimum contacts . . . such that the

---

ness thus infuse the inquiry concerning sufficiency of contacts. Perhaps that is why the Supreme Court simply considered reasonableness and sufficiency of contacts together in *Calder*, rather than trying to analyze them as separate prongs of a test." *Gordy*, 95 F.3d at 836 n. 6 (internal citations and quotations omitted). The *Gordy* court's unitary approach supports the Court's conclusion that both the purposeful availment and reasonableness prongs have been satisfied.

9. In the alternative, venue is proper under 28 U.S.C. § 1391(a)(3), which provides that venue is appropriate in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." Here, both requirements are met. First, as set forth in Section I of this Order, the Court has personal jurisdiction over Defendants. Second, it appears that there is no other district in which Plaintiff may bring this action. As set forth in Section I, C of this Order, Plaintiff may not bring this action in the Southern District of New York, Defendants' jurisdiction of choice, due to the statute of limitations on libel cases. Defendants have not demonstrated that jurisdiction would be proper in any other district. As the requirements of 28 U.S.C. § 1391(a)(3) are met, venue is proper under that subsection as well as under § 1391(a)(2).

maintenance of the suit does not offend traditional notions of fair play and substantial justice.' "); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841–842 (9th Cir.1986)(upholding district court's determination that venue in Montana was proper under 28 U.S.C. § 1391(a) because the plaintiff was a resident of Montana and the claim arose in Montana).

### B. *Transfer of venue*

In the alternative, Defendants request that the Court transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).[10] The Court declines to transfer this case.

28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

This statute partially displaces the common law doctrine of forum non conveniens. *See Decker Coal Company*, 805 F.2d at 843 (citing *Miskow v. Boeing Co.*, 664 F.2d 205, 207 (9th Cir.1981)). Even so, forum non conveniens considerations are helpful in deciding a § 1404 transfer motion. *Decker*, 805 F.2d at 843. In a forum non conveniens case, a court must balance the preference accorded a plaintiff's choice of forum with the burden of litigating in an inconvenient forum. *See id.* The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Id.*

 Here, Defendants have not made the requisite strong showing of inconve-

nience. Defendants argue that the Southern District of New York is the most appropriate venue because the most relevant witnesses are located either in that district, Plaintiff is the only witness that is located in Hawaii, the primary distribution of the Post is in New York, and because it would be difficult and expensive for Defendants' travel to Hawaii for depositions and for a trial.

The Court is not persuaded by Defendants' arguments. Defendants do not dispute that Plaintiff resides in Hawaii.[11] Although Defendants contend that all of the witnesses except Plaintiff are located outside of Hawaii, Plaintiff has stated that she has identified five witnesses, other than herself, who are residents of Hawaii who would have to travel to New York were the action transferred.[12] (Affidavit of Nancy Miracle, October 13, 1999, ¶ 8.) Defendants, in addition, have failed to demonstrate that it would be prohibitively expensive or difficult for Defendants to travel to Hawaii to litigate this action. As the Ninth Circuit has noted on more than one occasion, "in this era of fax machines and discount air travel," it is not unreasonable to require a party to litigate in a distant forum. *Panavision*, 141 F.3d at 1323; *see also Core–Vent*, 11 F.3d at 1489; *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). The Post is a large corporation that could more easily travel to Hawaii to litigate than could Plaintiff travel to New York. *See Core–Vent*, 11 F.3d at 1489 (determining that a large corporation could more easily travel for litigation than could individuals who were parties to the action). Defendants' assertions regarding mone-

---

**10.** Defendants have conceded, both in their Motion to Transfer Venue and at oral argument, that transfer of the case pursuant to 28 U.S.C. § 1404(a) will solve Plaintiff's statute of limitations problem because when a case is transferred pursuant to § 1404(a), the substantive law of the transferor state applies. *See Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Here, if Hawaii law applies, Plaintiff is not barred by the statute of limitations from bringing this suit.

**11.** Defendants do state that "it appears that even Plaintiff has not resided in Hawaii for that long." (Defendants' Motion at 26.) Plaintiff, however, has attested that she has lived in Hawaii for over thirteen years. (Affidavit of Nancy Miracle, October 13, 1999, ¶ 3.)

**12.** It appears that witnesses who reside in Hawaii will be an integral part of Plaintiff's case, as they will allegedly testify regarding the effects that the article at issue had on Plaintiff and her reputation.

tary expense and difficulty alone do not persuade the Court that this case should be transferred.

Defendants, in short, have not made "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843. Based on a consideration of the evidence presented at this stage, the Court determines that the convenience of the parties and the witnesses, and the interests of justice, do not require the Court transfer this case. The Court, accordingly, DENIES Defendants' motion to transfer this action to the United States District Court for the Southern District of New York.

### CONCLUSION

The Court concludes as follows:

1. The Court has personal jurisdiction over Defendants in this action.

2. Venue in the United States District Court for the District of Hawaii is proper pursuant to 28 U.S.C. § 1391(a).

3. The Court declines, pursuant to 28 U.S.C. § 1404(a), transfer this action to the United States District Court for the Southern District of New York.

The Court, accordingly, DENIES Defendants' Motion to Dismiss the Complaint. The Court also DENIES Defendants' Motion to Transfer Venue.

IT IS SO ORDERED.