Glynn Richard DAVIS,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 77–1942.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1979.

Decided April 20, 1981.

Rehearing and Rehearing In Banc
Denied May 28, 1981.

Blaine Evans, Boise, Idaho, and Avrm G. Alder, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff-appellant.

William Kanter, Civil Division, Washington, D.C., for defendant-appellee.

Before MERRILL, TANG and SCHROE-DER, Circuit Judges.

MERRILL, Circuit Judge:

*Background*

The Sabin Type III oral polio vaccine was administered to appellant Davis as part of a nationwide campaign initiated by the government of the United States to eradicate paralytic poliomyelitis (polio) in this country. Mass immunization centers were established in cooperation with state and local medical authorities, and the campaign was widely publicized.[1] The Division of Biologic Standards (DBS) of the National Institutes of Health, a part of the United States Department of Health, Education and Welfare, was charged with testing and licensing manufacture of the vaccine, pursuant to 42 C.F.R. § 73.110 *et seq.*

The vaccine was administered to appellant Davis at one of these centers in March, 1963. Within thirty days, appellant was paralyzed from the waist down and exhibited other symptoms of polio. Davis brought suit against the manufacturer of the drug, Wyeth Laboratories, Inc., in 1964.

In the course of that litigation, in October, 1965, defendant Wyeth Laboratories, Inc., noticed the deposition of Dr. Ruth Kirschstein, the chief of the pathology section of the laboratory of Viral Immunology, DBS, accompanied by a subpoena duces tecum ordering her to bring to the deposition, inter alia, all records of DBS relating to lot No. 03503 of the Sabin Type III oral polio vaccine. The vaccine ingested by Davis was from this lot. Appellant's attorney was present at this deposition. Dr. Kirschstein brought with her records documenting the results of a single neurovirulence test;[2]

---

1. This mass immunization program is described in *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 123–25 (9th Cir. 1968), a previous action brought by this plaintiff against the manufacturer of the vaccine he ingested. The district court initially gave judgment for the manufacturer; this court reversed and remanded. The parties settled out of court before the case went to trial a second time.

2. Each lot of vaccine was subjected to various tests by DBS. The so-called neurovirulence test, at issue here, involved administering the vaccine to thirty monkeys. After a seventeen-to-twenty-day observation period, the monkeys were destroyed and the brain or spinal cord of each monkey, depending on which had been injected with the vaccine, was removed and the tissue examined under a microscope for lesions. Lesions were graded on a scale of severity from one to four; if the number of monkeys

the results fell within acceptable limits.[3]

Appellant alleges that not until 1973 did he learn from an attorney representing a plaintiff in another suit[4] that DBS had conducted another neurovirulence test on lot No. 03503, and that the results of that test did not fall within the acceptable range.[5] In April, 1973, appellant filed a notice of claim under the Federal Tort Claims Act (FTCA) 28 U.S.C. § 1346 et seq., and in April, 1974, brought the instant action in the court below.

The district court granted summary judgment for the United States, holding that Davis' suit was barred by the two-year statute of limitations which applies to all actions brought under the FTCA. 28 U.S.C. § 2401(b).

Davis appeals, contending that either: (1) the cause of action did not accrue until he learned, in 1973, of the facts indicating the government's responsibility for his paralysis; or (2) the statute was tolled by the government's fraudulent concealment of the results of the second test.

We affirm the district court's grant of summary judgment.

### Accrual of the Action

A two-year statute of limitations applies to all suits brought under the FTCA. 28 U.S.C. § 2401(b).[6] Appellant contends, however, that under the so-called "discovery rule" applied in medical malpractice cases, the cause of action did not accrue and the statute did not begin to run until he

learned, in 1973, of the results of the second neurovirulence test. United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), is cited in support of the proposition that the action accrues when the plaintiff learns, or, in the exercise of reasonable diligence should have learned, of his injury and of the actions that caused it. 444 U.S. at 123–24, 100 S.Ct. at 360–61. While the present case is not technically one involving medical malpractice, it is in many ways similar to such an action,[7] and we will assume, arguendo, that it should be assimilated to the category of medical malpractice for statute of limitations purposes. Nonetheless, we conclude that appellant's claim is barred by the statute.

The general rule in tort law is that the claim accrues at the time of the plaintiff's injury. In the area of medical malpractice this has been felt to be unduly harsh in those cases where the fact of injury remains undisclosed. The rule accordingly has widely been modified to provide that a claim does not accrue until the injury has manifested itself. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed.2d 1282 (1949). The Restatement (Second) of Torts § 899, Comment e, quoted in United States v. Kubrick, supra, 444 U.S. at 120 n.7, 100 S.Ct. at 358 n.7, reflects this change:

> "In a wave of recent decisions [it has been held] that the statute must be construed as not intended to start to run until the plaintiff has in fact discovered the fact that he has suffered injury or by the exercise of reasonable diligence should have discovered it."

developing lesions and the severity of the lesions fell within DBS standards, the lot was deemed to have satisfied the neurovirulence test.

**3.** The test results revealed by Dr. Kirschstein at the October, 1965, deposition indicated that one monkey had developed lesions classified "one" and another monkey had developed lesions classified "three"; these results were within the acceptable range under the DBS standards.

**4.** Griffin v. United States, 351 F.Supp. 10 (E.D. Pa.1972), aff'd 500 F.2d 1059 (3d Cir. 1974).

**5.** One monkey developed lesions classified "four"; appellant contends that this was not

within the acceptable range under the DBS standards.

**6.** The statute was amended in 1970 to provide that a tort claim against the United States shall be barred unless written notice is provided to the appropriate federal agency within two years or unless a suit is instituted within six months of the mailing of notice of final agency action. Previously, the statute had simply required that an action be begun within two years of the time when it accrued. As will be apparent, the result in the present case is the same under either form of the statute.

**7.** See Hammond v. United States, 388 F.Supp. 928, 932 (E.D.N.Y.1975).

In *Kubrick*, the Court assumed that the discovery rule should be further modified to provide that accrual does not occur, and thus that the statute of limitations does not commence to run, until the plaintiff has discovered, or, in the exercise of reasonable diligence should have discovered, both his injury and its cause.[8] The Court noted that "the United States was prepared to concede as much for present purposes," *id.* at 120–21, 100 S.Ct. at 358–59.) The question presented was whether the rule should be still further extended to defer accrual until the plaintiff had, or, in the exercise of reasonable diligence should have had, knowledge of the defendant's negligence. The Court approached this question as one involving the construction of § 2401(b). It stated:

> "[We] are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims. [Citations omitted]. We should regard the plea of limitations as a 'meritorious defense, in itself serving a public interest.' [Citations omitted]."

*Id.* at 117, 100 S.Ct. at 357.

The Court then made it plain that it was not prepared to go further than the government concession. It refused to defer accrual until fault as well as injury and cause had been discovered; it would not hold that "the statute is not to run until the plaintiff is led to suspect negligence." *Id.* at 124, 100 S.Ct. at 124.

■ With knowledge of the fact of injury and its cause the malpractice plaintiff is on the same footing as any negligence plaintiff. The burden is then on plaintiff to ascertain the existence and source of fault within the statutory period. It follows that diligence or lack of diligence in these efforts is irrelevant. In the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue. *Kubrick* makes this plain. Once a plaintiff knows that harm has been done to him, he must, the Court states, "determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury." *Id.*

■ In the present case, appellant was aware in April, 1963, that he had been injured and that the Sabin vaccine was the likely cause of his injury.[9] With knowledge of the fact of injury and its cause, appellant was at the time of his injury placed on the same footing as other negligence plaintiffs. The claim, then, accrued at the time of injury and the statute started to run. It was up to him to "determine within the period of limitations whether to sue or not." *Id.*

We conclude that in the absence of fraudulent concealment, appellant's claim against the United States was barred by limitations.

### Fraudulent Concealment

■ Appellant contends that even if the cause of action accrued prior to 1973, the statute was tolled by the government's fraudulent concealment of the results of the second test during the October, 1965, deposition of Dr. Kirschstein. This argument fails, since the two-year period had already elapsed.

---

8. This rule is followed in this and most other circuits. *Hungerford v. United States*, 307 F.2d 99, 102 (9th Cir. 1962). *Accord, Exnicious v. United States*, 563 F.2d 418 (10th Cir. 1977); *Bridgford v. United States*, 550 F.2d 978 (4th Cir. 1977); *Jordan v. United States*, 503 F.2d 620 (6th Cir. 1974); *Toal v. United States*, 438 F.2d 222 (2d Cir. 1971).

9. At the very latest, he was certainly aware that the vaccine was the cause in 1964, when he brought suit against Wyeth Laboratories alleging that such was the case.

Appellant also argues that certain press releases and reports by the government indicating that there was no probable link between the taking of the vaccine and subsequent polio cases amounted to fraudulent concealment. This contention is meritless.[10] It may well be that the government was negligent in maintaining and publishing records. However, failure of the government to ascertain and publish the fact of its negligence is hardly sufficient to constitute fraudulent concealment. *See Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).

We conclude that appellant's action was barred by the applicable statute of limitations. The decision of the district court granting summary judgment is affirmed.

TANG, Circuit Judge, dissenting.

I respectfully dissent. Quite simply, the record fails to support the majority's assertion that "appellant was aware in April 1963, that the Sabin vaccine was the likely cause of Davis' injury." First, although Davis contacted polio in April 1963, he was hospitalized until October 25, 1963, and it is unclear when he had sufficiently recovered to be aware of *anything*. At best, the record indicates that Davis was functioning again in "approximately *June*, 1963" when he began to write letters inquiring about his disease. Clerk's Transcript Vol. IA, at 243.

More importantly, although Davis may have wondered in the summer of 1962 if the vaccine had induced his disease, "questioning" and a "knowing" causation cannot be equated. The *Kubrick* court plainly held that the statute begins to run only when a plaintiff is "armed with the facts about the harm done to him ..." 444 U.S. at 123, 100 S.Ct. at 360. In other words, the plaintiff must be in "possession of the critical facts that he has been hurt and *who has inflicted the injury*" because "the facts about causation may be in the control of the putative defendant, unavailable to the

plaintiff or at least very difficult to obtain." *Id.* at 122, 100 S.Ct. at 359 (emphasis added). In *Kubrick*, the plaintiff had surgery in April and developed a hearing loss in mid-June. In succeeding months, he consulted several specialists who diagnosed his malady as "bilateral nerve disease". Finally, in January (some 7 months after injury), a doctor told Kubrick that it was "highly possible" that a treatment administered after surgery *caused* his deafness. At that point, the court held, Kubrick knew of his injury and its cause and the statute began to run.

Here, Davis may have *suspected* that the vaccine caused his disease (just as Kubrick may have suspected his recent surgery was in some way connected), but apparently no one, much less a doctor, would even suggest a "high possibility" that the two events were causally linked. To the contrary, all authorities consulted apparently assured Davis that oral Sabin vaccine could not be proved to cause the disease. For example, sometime in October, 1963, still searching for the cause of his disease, Davis wrote to the Washington State Department of Health. In recounting his story, he stated:

> During the last six months I have had around 20 Drs. check me and everyone of them have said I was paralyzed, which I was just a little bit aware of. Not one of them would say a damn thing or admit it could have been due to the cube that was the cause of my illness ... [sic]

Clerk's Transcript, Vol. IA, at 286.

Consistent with this description, on October 25, 1963, Davis was discharged with a diagnosis of paralytic poliomyelitis "due to undetermined cause". *Id.* at 241. Interestingly, in fact, the Idaho State epidemiologist refused to report Davis' case as poliomyelitis, and, in the Fall of 1964 was still diagnosing Davis' disease as "lower neuron disease with paralysis—*etiology* unknown". *Id.* at 245.

Moreover, the scientists to whom Davis wrote, and the articles he read, failed to

---

**10.** These press releases and reports might have served also as additional notice to appellant of the government's involvement in his claim.

suggest a causal connection between the vaccine and the paralysis. For example, an HEW doctor stated in an article published in June 1963 that "no evidence has been adduced to show that this vaccine, composed of these strains, had ever caused the disease it was designed to prevent." *Id.* at 244. Similarly, in the summer of 1964, Dr. Sabin informed Davis "that there was absolutely no way" that he could have contracted polio from taking the vaccine. *Id.* at 246. *See also id.* (U.S. government committee report of September 30, 1964, stating that "it is not possible to prove that any individual case was caused by the vaccine and that no laboratory tests available can provide a definitive answer").

The record available to me, then, suggests that Davis was still struggling to determine the cause of his injury by the critical date in October 1963, and well beyond. In any event, at the least the question *when* Davis knew (1) of his injury (paralysis) and (2) its cause (the vaccine) should be *a factual determination* for the jury, and I would reverse the premature grant of summary judgment. Such a result is justified since the Government, as the moving party, has failed to carry its burden of demonstrating the absence of a genuine issue of material fact. *See also Marshall v. Kimberly-Clark Corp.,* 625 F.2d 1300, 1302 (5th Cir. 1980) ("A dispute over the facts surrounding the date the statute of limitations began 'would alone warrant denial of the motion for summary judgment.' "); *see generally Yazzie v. Olney, Levy, Kaplan & Tenner,* 593 F.2d 100, 103 (9th Cir. 1979).

In sum, I agree that the majority properly states the *Kubrick* rule. On this record, however, I fail to see how it can affirm the summary judgment.