Wayne Dale OUTMAN,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 87–4253.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1989.
Memorandum May 30, 1989.
Opinion Nov. 27, 1989.
Designated for Publication Dec. 1, 1989.

Carl A. Taylor Lopez, Seattle, Wash., for plaintiff-appellant.

Christopher L. Pickrell, Asst. U.S. Atty., Seattle, Wash., for defendant-appellee.

Before WRIGHT and ALARCON, Circuit Judges, and RAFEEDIE,[*] District Judge.

RAFEEDIE, District Judge:

Wayne Dale Outman appeals from the district court's grant of summary judgment dismissing his suit under the Federal Tort

[*] Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation.

Claims Act (FTCA) for failure to bring his claim within two years after it accrued. We affirm.

## I. BACKGROUND

The plaintiff, Wayne Dale Outman, is a veteran who was diagnosed as schizophrenic by the Veteran's Administration ("VA") in 1972. Between 1972 and 1977, Mr. Outman was hospitalized at least ten times in VA mental health wards in the States of Washington, California, and Oregon. At the VA hospitals, Outman's various inpatient diagnoses were charted chronologically by the VA doctors as: "schizophrenia, schizoaffective depression," "depressive symptoms", "schizophrenia versus mania," "manic depressive illness, bipolar type," and "manic depressive illness." As a result of these diagnoses, Outman was put on a prescription for neuroleptic drugs. Neuroleptics are known as "antipsychotic drugs." They are extremely powerful and sometimes have adverse side effects.[1]

On or about November 1, 1976, Mr. Outman, along with his wife, met with VA doctors and were told that Mr. Outman was suffering from tardive dyskinesia as a result of the neuroleptic drugs that had been prescribed for him. After the meeting, Mr. Outman left the VA hospital and has not been admitted to any VA facility since.

In 1977 Outman and his wife Carolyn petitioned the VA Compensation and Rating Board for service-connected disability benefits, arguing that his tardive dyskinesia was a service connected injury. There was a formal hearing on July 6, 1977 at which the Outmans were present. David Kays, National Service Officer of the Disabled American Veterans, presented the issues at the beginning of the hearing:

The question at issue is service connection for tardive dyskinesis ... claimed to have been incurred as the result of treatment by the Veterans Administration. It is contended that tardive dyskinesis developed as the result of the lack of proper consideration and synchronization of the use of drugs in treatment of Mr. Outman's nonservice-connected psychosis. Mrs. Outman indicates that Mr. Outman developed tardive dyskinesis because the medication Haldol was prescribed for him without the proper care being taken in recognizing the symptoms of side effects. SER at 14.

Mr. and Mrs. Outman then testified, stating their case. In his testimony, Mr. Outman complained of the side effects of his medication. The Board denied the application.[2]

After his application for a higher service-connected disability pension was denied, he appealed his decision to the Board of Veterans Appeals. In his testimony before the Appeals Board in April, 1978, Outman again complained about the VA giving him drugs with "a lot of side-effects" without explaining things to him. The Board of Veterans Appeals affirmed the denial of Outman's application for a higher disability pension, but recommended that Outman's case be reviewed by the local VA Regional Office Board to see whether he might meet alternative criteria for an "accidental disability" rating.

In July of 1982, Dr. Dudley, a specialist in psychiatry and psychobiology, examined Outman and told him that he had been misdiagnosed by the VA. Dr. Dudley stated that Outman suffered from a bipolar manic-depressive disorder, not schizophrenia. He informed Outman that because he was not schizophrenic, he should not have

---

**1.** As noted in the *Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health* 854 (4th ed. 1987):

> Approximately 20 percent of the patients treated with neuroleptics for long periods develop tardive dyskinesia, a syndrome of [Parkinson-like] movements of the tongue, mouth, face, neck, extremities, and trunk, which may continue after the drug is stopped.

**2.** Also in 1977, Mr. Outman signed VA medical records releases allowing personal injury attorneys Noble & Lonnquist of Portland, Oregon, access to his entire VA medical record. The purpose was described as: "Medical-legal research by attorney Richard Noble and those he may designate." An accompanying letter from Noble & Lonnquist stated that "[t]his office represents the above named client" and requested photocopies of the entire record of Mr. Outman's VA medical care.

been put on long-term neuroleptic drug therapy, and that he had in fact suffered organic brain injury as a result of the neuroleptic drug therapy.

On August 15, 1983 Outman filed a pro se malpractice suit pursuant to the Federal Tort Claims Act. The government moved to dismiss the action due to the expiration of the FTCA's two-year statute of limitations. Outman then retained counsel, who opposed the government's dismissal/summary judgment motion.

On June 12, 1987 the district court heard oral argument on the government's motion to dismiss. On June 25, 1987 the district court entered an Order and Judgment dismissing the action for expiration of the statute of limitations. The government submitted proposed findings of fact an conclusions of law which were entered by the district court on August 7, 1987. The district court concluded that:

> The undisputed germane facts show that regardless of the precise extent of Mr. Outman's mental illness or injury, by at least 1977 he was personally aware of the "factual predicate" of his claim, *i.e,* neurological damage caused by the drugs administered to him by the VA. In view of the accusatory testimony given by Mr. Outman at the VA hearings beginning in 1977, "there can be but one reasonable conclusion" as to the issue presented, and summary judgment thus is required. ER at 97 (cites omitted.)

The issue presented on appeal is whether or not the district judge correctly arrived at the factual finding and dismissed the claim as time-barred.

## II. DISCUSSION

### A. Standard of Review

The district court's grant of summary judgment is reviewed de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). *Id.* The court of appeals must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court

correctly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

### B. Accrual of the Claim

The Federal Tort Claims Act (FTCA), 28 U.S.C. 2401(b), bars any tort claim against the United States unless it is presented in writing to the appropriate federal agency "within 2 years after such claim accrues." In *United States v. Kubrick,* 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979), the Supreme Court held that a cause of action in a medical malpractice case under the FTCA accrues when "the plaintiff has discovered both his injury and its cause." In applying *Kubrick,* this court has held that the "cause" is known when the immediate physical cause of the injury is discovered. *Davis v. United States,* 642 F.2d 328, 331 (9th Cir. 1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982).

The record of the VA hearing on July 6, 1977 leads to only one possible conclusion— that Outman knew of both his injury and its cause in 1977. The hearing was concerned with the injury of tardive dyskinesia and the administration of the neuroleptic medication. Because the record demonstrates conclusively that Outman knew of both the injury and its cause in 1977, appellant's federal tort claims filed in 1983 are barred by the two-year statute of limitations.

## III. MISDIAGNOSIS

Appellant argues that the actual cause of his injury was a misdiagnosis by VA doctors. Appellant's theory is that only in 1982, when Dr. Dudley identified the alleged misdiagnosis of schizophrenia, did the cause of the injury become known to the Outmans. As appellant puts it: "The act constituting the alleged malpractice in Mr. Outman's case was the erroneous diagnosis of schizophrenia by the VA. This was not discovered until 1982" (Reply Brief at 8); "Under *Kubrick* one needs to discover both the injury (brain damage) and its cause (misdiagnosis) before a claim accrues." (Reply Brief at 17).

As this court discussed in *Augustine v. United States,* 704 F.2d 1074 (9th Cir.1983),

a misdiagnosis injury arises when a condition which could otherwise be treated is misdiagnosed and the result is a worsening of some prior condition:

> When a claim of medical malpractice is based on the failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. In this type of case, it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a preexisting problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b). *Augustine* at 1078.

In appellant's case the alleged misdiagnosis did not lead to the progression of some underlying condition. Assuming that the claim is true and that it was the result of a misdiagnosis that the drugs were prescribed, it was the *affirmative* act of prescribing the drugs which harmed Outman, not any misdiagnosis.

Appellant does not claim here that some underlying condition developed into a more serious condition. Rather, the claim is that a misdiagnosis led to an affirmative act which then caused the injury. And, as the Board hearing on July 6, 1977 shows, appellant clearly knew of both the injury and its cause in July of 1977. Therefore, the statute began to run in 1977 and Outman's action, filed in 1983, is time-barred.

## IV. THE CONTINUOUS TREATMENT DOCTRINE

Appellant's assertion that his claim did not accrue until the drug treatment ceased in 1982 is not persuasive. In *Ashley v. United States*, 413 F.2d 490, 492 (9th Cir.1969), this court held that the continuous-treatment doctrine was not available to toll the statute of limitations in medical malpractice cases under the FTCA where the plaintiff knows of the acts constituting the negligence. In the present case, the trial court correctly found that the Outmans were clearly aware of the acts constituting the negligence in 1977.

## V. APPELLANT'S COMPETENCY

Finally, appellant argues that a material issue of fact existed concerning Mr. Outman's competency to understand the nature of his injury and its cause. Here appellant relies upon the cases which hold that the statute of limitations does not run in a Federal Torts Claims Act case when the government renders someone comatose and thus incapable of understanding the nature of his injury or its cause. *See Washington v. United States*, 769 F.2d 1436 (9th Cir.1985). The uncontested evidence in the present case, however, shows that regardless of the precise extent of appellant's mental illness or injury, he was aware of the physical cause of his injury by at least 1977. The record demonstrates that appellant testified lucidly before a VA board in 1977, stating that he had been injured by VA doctors giving him drugs.[3]

## VI. CONCLUSION

Because the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue" as to the accrual of the statute of limitations. Consequently, summary judgment is appropriate. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Therefore, the district court's order dismissing the action is affirmed.

Affirmed.

---

**3.** Though we need not reach this issue, the Seventh Circuit found that tardive dyskinesia does not constitute a disability which tolls the statute of limitations under the FTCA. *See Barnhart v. United States*, 884 F.2d 295, 299 (7th Cir.1989).