Nancy McGRAW, individually and as the Personal Representative of the Estate of Kenneth Place, Plaintiff–Appellant,

and

Kenneth Place, Estate of, Plaintiff,

v.

UNITED STATES of America, Defendant–Appellee.

No. 00–35514.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2001.

Filed Feb. 25, 2002.

Larry Zinn, San Antonio, Texas, for the plaintiff-appellant.

Eugene A. Studer, Assistant United States Attorney, United States Attorney's Office, Tacoma, Washington, for the defendant-appellee.

Appeal from the United States District Court for the Western District of Washington, Franklin D. Burgess, District Judge, Presiding.

Before: O'SCANNLAIN, GRABER, and McKEOWN, Circuit Judges.

## OPINION

McKEOWN, Circuit Judge.

This case calls upon us to refine our longstanding rule regarding the accrual of certain medical malpractice claims brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. In *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir.1983), we held that a plaintiff alleging a failure-to-diagnose theory must file an administrative claim with the appropriate government agency, pursuant to 28 U.S.C. § 2401(b), within two years after learning that a pre-existing condition has transmuted into a more serious ailment. We have not, however, had occasion to address when such a claim accrues if the doctors never informed the plaintiff about the existence of such a condition.

Here, Nancy McGraw, suing individually and as personal representative of the estate of her deceased father, Kenneth Place (collectively "McGraw"), brought wrongful death and survival claims against the government. She maintained that military doctors failed to diagnose a cancerous growth in her father's lung, an omission that resulted in Place's death after the cancer spread throughout his body. The district court found that McGraw's claims accrued when she first learned that her father had cancer, and dismissed her complaint for lack of subject matter jurisdiction because she filed her administrative claim more than two years later. On appeal, McGraw argues that the district court misapplied our holding in *Augustine* regarding the accrual rule because, among other things, it failed to appreciate the legal significance of the government's failure to inform Place that he had a pre-existing condition. We agree.

In accordance with *Augustine*, we hold that a plaintiff who brings a failure-to-diagnose claim under the FTCA does not "discover" the claim until he not only is aware—or, through the exercise of reasonable diligence, should have become aware—of the existence of a pre-existing condition, but also learns that the condition has transformed into a more serious ailment. Consequently, we reverse the dismissal of the estate's wrongful death claim. As for the decedent's survival claim, we remand for further factual development concerning whether Place was, during the period preceding his death, sufficiently cognizant of a possible misdiagnosis.

## BACKGROUND

Place was a Navy veteran who remained affiliated with or employed by the service in various capacities until his death in 1996, including a stint in a shipbuilding yard where he was exposed to asbestos

and ionizing radiation. Until 1987, nine years before his death, Place smoked approximately three or four packs of cigarettes per day. During various physical examinations over the years, he informed his military physicians about his smoking habit and his exposure to hazardous substances.

For reasons that are not clear from the record, Place underwent an examination at Bremerton Naval Hospital ("BNH") in February 1994. During the visit, physicians took a chest x-ray and also performed a scan of Place's chest cavity. A radiologist reviewed the results and noticed an unusual area on Place's right lung that, he suspected, might be a malignant growth. The radiologist recommended that Place be examined by a heart-lung specialist and also suggested that the hospital perform a biopsy on the suspicious area to determine its provenance.

Subsequently, a Navy pulmonologist examined Place and concluded that the suspicious area in the right lung was scar tissue. He also ordered a new x-ray of Place's chest cavity.

The radiologist interpreting the x-ray concurred with the pulmonologist's diagnosis and recommended that Place receive a follow-up chest x-ray six months later. (It is unclear whether this radiologist was the same physician who examined Place's prior x-rays.) For some inexplicable reason, however, the pulmonologist later informed Place that his lung was normal and, contrary to the radiologist's recommendation, told Place that there was no need for a follow-up examination. The record contains no indication that the pulmonologist—or any other doctor at BNH—ever informed Place during his February 1994 visit that he had any scar tissue, growth, or abnormality in his right lung.

During the next two years, Place suffered from repeated chest congestion and persistent back pain. Place consulted a chiropractor for his back pain but apparently did not receive medical treatment for his congestion.

In August 1996, Place's health deteriorated rapidly. After he unexpectedly failed to report to work on August 15, some of Place's friends went to his home and discovered that he was seriously ill. They transported Place to BNH; doctors there eventually concluded that Place had lung cancer that had metastasized to his brain and various bones. McGraw, who resided in New York, received an urgent request that she visit her father at BNH as soon as possible. She arrived shortly thereafter, learned from the BNH doctors that her father had terminal lung cancer, and was present at Place's bedside when he passed away on August 27.

Given the suddenness of Place's death and his persistent health problems, McGraw became suspicious of the quality of medical care that he had received from BNH. After retaining counsel, McGraw made at least four requests to BNH for Place's records before finally obtaining them in October 1997. Medical experts retained by McGraw then reviewed the records and concluded that, as of February 1994, Place had a pre-existing condition in his right lung that BNH failed to diagnose properly as a malignancy.

In October 1998, slightly more than two years after she first learned that her father had lung cancer, McGraw filed an administrative claim with the Navy. The Navy did not act on the claim. As a result, McGraw commenced suit in federal court. The district court dismissed the action for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 2401(b). It reasoned that the claims accrued, at the latest, in August 1996—when McGraw first learned that Place had lung cancer—and

that McGraw's administrative claim was therefore untimely.

## STANDARDS OF REVIEW

■■■■ We review de novo the district court's order dismissing an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Raddatz v. United States*, 750 F.2d 791, 795 (9th Cir.1984). In undertaking such a review, we must accept all uncontroverted factual assertions regarding jurisdiction as true. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987). Those assertions that are contested by the government must, for purposes of adjudicating the jurisdictional motion, be construed in favor of McGraw. *See Augustine*, 704 F.2d at 1077 ("[T]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."). Moreover, "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Id.*

## DISCUSSION

### I. GENERAL FTCA ACCRUAL PRINCIPLES

■■■■ Under the FTCA, a tort claim is barred unless the claimant notifies "the appropriate Federal agency" "within two years after such claim accrues." 28 U.S.C. §§ 2401(b), 2675(a). This limitation is a threshold jurisdictional requirement. *See Burns v. United States*, 764 F.2d 722, 724 (9th Cir.1985). It is now well settled that in the medical malpractice context, a claim generally accrues when the plaintiff becomes aware of both the injury sustained and its cause. *United States v. Kubrick*, 444 U.S. 111, 119–22, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Davis v. United States*, 642 F.2d 328, 331 (9th Cir.1981).

The statute of limitations inquiry, however, becomes more complicated when the plaintiff proceeds under a failure-to-diagnose theory, because it is often very difficult for a plaintiff to determine the genesis of an injury resulting from a doctor's omissions. Whereas injuries directly inflicted by purported affirmative malpractice, such as an operation on the wrong limb or complications from surgery, are often readily identifiable, a failure to identify and treat a latent condition may not become manifest to the patient until years later at the onset of a serious malady. *See Augustine*, 704 F.2d at 1078. In short, the absence of a diagnosis or the failure to render an accurate diagnosis is, by its very nature, often elusive and difficult to pin down.

The parties acknowledge that *Augustine* furnishes the general rule that governs the accrual of claims brought under a failure-to-diagnose theory, but they offer different interpretations of that rule. Accordingly, we turn first to *Augustine* to paint the backdrop for the present dispute.

### II. AUGUSTINE AND ACCRUAL IN A FAILURE–TO–DIAGNOSE CASE

In *Augustine*, the plaintiff was diagnosed initially in November 1975 as having a "bump . . . no bigger than a pinhead" on his palate. 704 F.2d at 1076. Even after a follow-up examination, the Air Force dentists did not inform him that the condition represented "a potentially serious medical problem." *Id.* Two years later, however, once Augustine learned that the bump was malignant, he had the cancerous growth removed. Three years later, the

cancer had metastasized to other areas of Augustine's body. *Id.*

Augustine then filed an administrative claim with the Air Force in April 1978, alleging, among other things, that the dentists had failed to diagnose that he had a malignancy on his palate. Later, he commenced an action in federal court in which he alleged similar claims. The district court dismissed the complaint for lack of subject matter jurisdiction and agreed with the Air Force that the actions of the Air Force dentists were sufficient to put Augustine on notice in November 1975 that he had a potentially serious condition.

On appeal, we reversed. We noted that although *Kubrick* and our holding in *Davis* provided a clear rule concerning the accrual of standard medical malpractice actions, that rule "cannot be applied mechanically to cases involving the failure to diagnose, treat, or warn." *Id.* at 1078. Instead, we held that an accrual analysis for failure-to-diagnose claims must focus on the transmutation into a more serious ailment:

> Where a claim of medical malpractice is based on the failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. *In this type of case, it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more*

> *serious condition that his cause of action can be said to have accrued for purposes of section 2401(b).*

*Id.* (original italics, other emphasis added). Because there were issues of fact concerning whether Augustine knew about the seriousness of his condition as of 1975, we remanded for further proceedings. *Id.* at 1079.

The government contends that the *Augustine* accrual rule is triggered whenever the plaintiff learns of a serious health condition, "no matter where on the spectrum of gravity the condition may be at the point of [her] discovery." Such a reading, however, misapprehends the basic thrust of our holding. In essence, the government would have us revert to the more basic discovery rule set forth in *Kubrick* and *Davis*. But such a rigid application of the rule would make little sense in the context of a failure-to-diagnose action where the plaintiff was never even aware of a pre-existing condition. As we cautioned in *Augustine*, "[t]he holdings in *Kubick* and *Davis* are instructive but cannot be applied mechanically to cases involving the failure to diagnose, treat, or warn." 704 F.2d at 1078.

Under the government's reading, the mere knowledge of a worsening medical condition would put the plaintiff on constructive notice that he had a pre-existing condition, thereby compelling him to undertake an immediate investigation to determine if the condition developed because of a failure to diagnose. From a practical standpoint, this would be illogical. A person suffering from an illness should not be forced during a time of such emotional distress to conduct a hasty fishing expedition through medical files to preserve claims for a later date.[1] Such an approach

---

1. The government also argues that *Dyniewicz* *v. United States,* 742 F.2d 484 (9th Cir.1984),

also places an unreasonable burden on the unwitting plaintiff who is a victim of a medical professional's failure to diagnose or disclose. From a medical standpoint, such an investigation would also be a shot in the dark. Many serious medical problems that develop over time are wholly unrelated to a failure to diagnose. And, from a policy standpoint, such a position would promise the filing of preventative and often unnecessary claims, lodged simply to forestall the running of the statute of limitations. Indeed, every heart attack, cancer, and other serious illness would trigger a legal cascade. We cannot countenance such a result.

 Thus, although we did not state so explicitly in *Augustine,* we now hold that an FTCA plaintiff asserting a failure-to-diagnose claim must know or have reason to know of a pre-existing condition before the accrual clock begins to run. Otherwise, it would be virtually impossible for a plaintiff to assert such a theory when the doctor's negligence is perhaps most wanton: a failure to inform the patient about the existence of a condition that should be treated immediately or monitored vigilantly in the future.

## III. MCGRAW'S CLAIMS

Having clarified the rule governing the accrual of failure-to-diagnose claims brought pursuant to the FTCA, we next examine the record before us to determine whether the district court erred in dismissing McGraw's claims.

 The parties did not distinguish in their briefs between McGraw's wrongful death and survivor claims. We note, however, that there is a fundamental difference between the two claims for accrual purposes. Wrongful death claims are brought by the personal representative of the decedent's estate (here, McGraw) to seek redress for the survivors' losses, while survival claims are, as the fiction goes, brought by the decedent's spouse or child to seek redress for the decedent's losses. *See generally Estate of Lee v. City of Spokane,* 101 Wash.App. 158, 2 P.3d 979, 989 (Wash.Ct.App.), *review denied,* 142 Wash.2d 1014, 16 P.3d 1263 (Wash. 2000).[2] Thus, whereas the focus of the wrongful death claim for accrual purposes is on the personal representative, with survival claims the focus is on the decedent's knowledge.

### A. WRONGFUL DEATH CLAIM

 The government argues that McGraw was personally aware of the cause of her father's death well in advance of August 1997. In support, it cites McGraw's deposition testimony about her knowledge that her father had been suffering from persistent back pain, congestion and coughing spells. McGraw, however, disputes the government's assertion that she knew about the cancer before August 1997. The government also contends that McGraw should have inferred from statements by BNH doctors in August 1997 that Place's prior back pain had been caused by the cancer spreading throughout his body, thus putting her on notice of Place's lung condition.

---

an FTCA wrongful death action based on the government's supposed failure to close a road in advance of a flash flood, supports its position that a malpractice claim accrues at the time a plaintiff learns about the cause of injury. In *Dyniewicz,* however, we specifically distinguished that general accrual rule from the more specialized rule that governs certain FTCA medical malpractice actions. *Id.* at 486.

2. FTCA actions are governed by the substantive law of the state in which the "act or omission occurred." *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1025 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 816, 151 L.Ed.2d 700 (2002).

Notably, however, the government does not argue that McGraw, a medical layperson, had any actual knowledge that Place may have had a pre-existing condition in his right lung that later developed into cancer. Nor did she have any knowledge that Place had been examined by Navy physicians who may have known about such a condition. Indeed, even if McGraw was aware as of August 1997 that her father's earlier back pain resulted from his cancer, such an admission has no legal effect in a failure-to-diagnose action. The statute of limitations for wrongful death claims brought under such a theory is triggered only by the plaintiff's knowledge of *both* the pre-existing condition *and* its transformation into a more dangerous ailment.

McGraw exercised reasonable diligence in investigating the cause of her father's death. Her counsel repeatedly sought to obtain copies of Place's medical records from BNH and was not successful in doing so until October 1997. Once she had the records in hand, she went the extra mile and retained experts to review the records. According to McGraw, she did not learn that her father's cancer resulted from a pre-existing condition until so advised by the experts. Argument aside, the government offers nothing to demonstrate that McGraw knew of the pre-existing condition until well after her father's death. Thus, her administrative claim was timely. Accordingly, we reverse the district court's dismissal of the wrongful death claim.

## B. SURVIVAL CLAIM

■ *Accrual of the survival claim rests on Place's knowledge* of his pre-existing condition. It is uncertain from the record before us whether Place, given his poor physical condition after being brought to BNH approximately two weeks before his death in August 1996, was lucid enough to be on notice for accrual purposes that his cancer may have resulted from a fail-ure to diagnose an earlier condition in his right lung. Nor can we resolve whether he may have had knowledge at an earlier date. Consequently, we remand to the district court for further proceedings. Because this factual determination is intertwined with the merits of the claim, "it was incumbent upon the district court to apply summary judgment standards in deciding whether to grant or deny the government's motion." *Augustine,* 704 F.2d at 1079. As in *Augustine,* a "plenary hearing on the merits" is necessary to resolve "basic factual issues." *Id.*

## CONCLUSION

We reverse the district court's dismissal of the wrongful death claim and remand the survival claim for further factual development.

**REVERSED and REMANDED.**