Nidia I. **TORO**, individually and as Next Friend for her minor son, Alejandro G. Toro, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

Civ. No. 03–00030 SOM–KSC.

United States District Court, D. Hawai'i.

Sept. 19, 2003.

William Copulos, Copulos Hoffman, Honolulu, HI, for Plaintiffs.

Thomas A. Helper, Assistant United States Attorney, Office of the United States Attorney, Honolulu, HI, Lawrence N. Rosen, Office of the United States Attorney, Miami, FL, for Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITES STATES' MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER THIS MATTER TO THE SOUTHERN DISTRICT OF FLORIDA*

MOLLWAY, District Judge.

I. *Overview*

Plaintiff Nidia I. Toro originally filed this action in the District Court for the Southern District of Florida, alleging that she had been misdiagnosed by physicians with the Department of Veterans Affairs. The case was transferred to this court, and

the Government now moves to dismiss or, in the alternative, to transfer the case back to the Southern District of Florida. The heart of the Government's argument is that Toro did not file the required administrative claim until after the applicable statute of limitations had run, and that Toro therefore could not be said to have exhausted her administrative remedies. The Government contends that, given the failure to exhaust, this court lacks jurisdiction over this matter. With one exception, this court disagrees and finds that the record does not establish that Toro filed her claims after the limitations period had run.

The motion to dismiss is DENIED as to the claims relating to the organic brain injury, PTSD, and the hysterectomy. While Toro knew in 1992 that she had suffered an organic brain injury, she claims that it was not until 1999 that she knew this injury stemmed from a failure to properly diagnose and treat injuries suffered in a 1977 car accident. The Government has not established otherwise on this motion. The only claim as to which the court agrees that Toro failed to exhaust administrative remedies is her dermabrasion claim, so as to that count the motion is GRANTED. The motion to transfer venue is DENIED.

## II. *Background Facts*

On February 26, 1977, Toro was involved in a car accident in Texas while she was an active-duty member of the military. She suffered minor physical injuries at the time, but soon developed depression and a decrease in cognitive functioning. Compl. ¶¶ 12–13. Toro sought psychological treatment at a Veterans Affairs Medical Center ("VAMC") in February of 1978. *Id.* She continued to seek treatment at various VAMCs in New York, Puerto Rico, and New Mexico throughout 1978 to 1980. In May of 1980 she was diagnosed as having a personality disorder. *Id.* ¶ 16. Toro alleges that the doctors rendered an improper diagnosis and failed to perform the medical procedures that would have revealed that she had suffered an organic brain injury in the 1977 car accident. Opp'n. at 6–7. Toro alleges that the failure to properly diagnose the nature of her injuries led to permanent physical and psychological injuries that could have been avoided or mitigated with proper care. *Id.*

On January 7, 1986, Toro was in another motor vehicle accident. This accident caused her to suffer neck and back pain and may have aggravated her existing brain injury. Toro alleges that the VAMCs where she sought treatment again failed to properly diagnose and treat her condition. *Id.*

On September 20, 1991, Dr. G. Webster Ross of the VA sent Toro a letter that stated for the first time that Toro had suffered an organic brain injury (as opposed to psychological problems), that the injury likely stemmed from "the motor vehicle accident," and that her prognosis for returning to her previous level of functioning was poor. Def. Ex. 2. Dr. Ross referred to a "motor vehicle accident in 1985" and did not mention the 1977 accident. *Id.*

In 1992, Toro sought to be declared 100 percent disabled in light of her organic brain injury. Def. Ex. 3. Toro argued to the VA that she had been misdiagnosed for years. Def. Ex. 5. In connection with her application, Dr. Anthony Holzang, a VA psychiatrist, noted that Toro had been misdiagnosed. He said that she had sustained brain damage in the 1986 accident and that the damage "did not progress or get worse after that." Def. Ex. 4.

In February 1996, Toro visited a VAMC in Florida, complaining of abdominal pain. Doctors performed a hysterectomy. Toro claims that the hysterectomy was not necessary and that it was performed negligently. Compl. ¶¶ 27–28. The Govern-

ment concedes that Toro has presented a triable issue with respect to the hysterectomy. Reply at 15.[1]

In 1998, Toro had dermabrasion plastic surgery on her face at a VAMC in Miami. She alleges that doctors negligently performed this procedure, leading to pigmentation abnormalities on her face. *Id.* ¶ 31.

In March 1999, Toro consulted with a private physician outside of the VA. This physician, Dr. Harold Burszstajn, diagnosed Toro as suffering from chronic organic brain injury and concluded that the injury resulted from the 1977 car accident and had been possibly aggravated by the 1986 accident. Pl.Ex. C. ¶ 11–13. Dr. Burszstajn opined that Toro's treatment for the 1977 accident had been inadequate and superficial. *See* attachment to Ex. C. Toro alleges that this is the first time that she knew her condition was related to the 1977 accident and the allegedly improper care she had received after that accident. *Id.* The doctor also diagnosed Toro as suffering from post-traumatic stress disorder ("PTSD") as a result of her injuries and her allegedly improper treatment at VAMCs over the years. *Id.*

In 1999 and 2000, Toro filed administrative claims alleging that VA doctors had repeatedly failed to provide her with proper medical care and that their negligence had caused her a variety of injuries that could have been avoided or mitigated with proper treatment. Toro concedes that her initial claims did not mention her allegations regarding the dermabrasion surgery, but argues that a letter dated December 8, 2000, served as an amendment to the original administrative claim. Pl.Ex. I at 7. When the VA failed to act on her claims, Toro deemed the inaction to be a rejection under 28 U.S.C. § 2675 of her claims and filed suit.

The Government moves to dismiss on the ground that Toro's administrative claims were filed too late and that Toro therefore failed to exhaust her administrative remedies, as required by law.

### III. *Motion to Dismiss Standard*

The parties agree that Toro was required to exhaust her administrative remedies before filing the present tort action. Under 28 U.S.C. § 2401(b), Toro was required to submit her claim to the VA "within two years after such claim accrues." Otherwise, her claim was "forever barred." "Timely compliance with section 2401(b) is a jurisdictional prerequisite" to this suit. *See Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). Whether this court has subject matter jurisdiction depends on when Toro's claim "accrued" for the purpose of § 2401(b). *See id.*

■ This court analyzes this accrual issue under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject matter jurisdiction on the court, or attack the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Amer. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir.1996).

■ When the motion to dismiss is a factual attack on subject matter jurisdic-

---

1. Toro also alleges that the VA failed to diagnose and treat her for Irritable Bowel Syndrome. *Id.* ¶ 29. However, Toro clarified at the hearing that she was not bringing a claim based on her IBS.

tion, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. *Thornhill,* 594 F.2d at 733. Accordingly, on a factual attack on subject matter jurisdiction, the court is not restricted to the face of the pleadings, but may review evidence such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction. *See McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988). Because the party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction, courts have held that the plaintiff must establish jurisdiction with evidence from other sources, such as affidavits or depositions. *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.,* 813 F.2d 1553, 1559 (9th Cir.1987). This requirement "is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." *Id.* Accordingly, affidavits and declarations in opposition to a factual attack on subject matter jurisdiction must be made on personal knowledge and set forth facts that would be admissible in evidence. Fed.R.Civ.P. 56(e).

## IV. *Analysis*

Having studied the record, this court concludes that, with the exception of the dermabrasion claim, the Government has not shown that Toro was untimely in filing her administrative claims concerning her injuries.

### A. *The Government Fails to Establish Untimeliness for Most of Toro's Non–PTSD Claims.*

■ Medical malpractice claims often involve affirmative acts by physicians that allegedly caused injuries. A medical malpractice claim brought in such a case under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, accrues when a plaintiff discovers both the existence and cause of his or her injuries. *United States v. Kubrick,* 444 U.S. 111, 119–22, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). A claim accrues when the "plaintiff has discovered, or in the exercise of reasonable diligence should have discovered, both its injury and its cause." *Davis v. United States,* 642 F.2d 328, 331 (9th Cir.1981).

■ When, however, the cause of an injury is a physician's alleged failure to diagnose or treat an ailment, rather than an affirmative act, the "injury is the *development* of the problem into a more serious condition which poses a greater danger to the patient or which requires more extensive treatment." *Augustine,* 704 F.2d at 1078 (emphasis in original). That is, the injury is the development of "a more serious medical problem than that which previously existed." *Id.*

*Augustine* is the leading Ninth Circuit case on this subject. *Augustine* involved a plaintiff diagnosed with having a bump on his palate in 1975. He was not told that the bump was malignant until 1977, by which time the cancer had spread. In 1978, plaintiff filed a claim under the FTCA. The Government argued that the claim was time-barred because it came more than two years after the plaintiff knew he had a bump on his palate. The Ninth Circuit rejected this argument, ruling that the injury was the development of the bump into a more serious condition, and that the plaintiff did not know of this injury until 1977. *Id.*

Not every case involving a misdiagnosis that leads to the worsening of a medical condition should be analyzed under the *Augustine* framework. A claim arising from a misdiagnosis that leads to an im-

proper method of treatment that, in turn, causes the patient's condition to worsen accrues like any other claim involving an affirmative act of malpractice. *Outman v. United States,* 890 F.2d 1050, 1053 (9th Cir.1989). In such a case, it is the "affirmative act" of improper treatment that causes the injury, not the misdiagnosis. *Id.*

In *Outman,* the plaintiff was improperly diagnosed as schizophrenic in 1972. He was given neuropletic drugs as treatment for schizophrenia. In 1976, he learned that the drug therapy had caused an organic brain injury. However, he did not learn that the diagnosis of schizophrenia was wrong until 1982. He filed an administrative claim in 1983, arguing that his claim had accrued in 1982. The Ninth Circuit, however, ruled that the "affirmative act" of prescribing the drugs had caused the injury. Therefore, Outman knew the cause of the injury in 1976, and the claim was time-barred by 1983. *Id.*

The Government analogizes the present case to *Outman,* claiming that Toro's injuries resulted from improper treatment that flowed from the failure to diagnose, not from the misdiagnosis itself. Def. Mem. at 7–8. The Government misconstrues Toro's claims.

The gravamen of Toro's claims is that "more serious medical problems developed on account of Physicians' failure to diagnose, treat or warn" her about her organic brain injury. Pl. Opp'n. at 13. While Toro may have received improper treatment based on the incorrect diagnosis, Toro is not arguing that this improper treatment affirmatively caused her worsening injury, as was the case in *Outman,* where the

prescribed drugs caused further injury. Toro's condition allegedly worsened because she did not receive proper medical care as a result of the misdiagnosis, not because the medical care she received directly caused her injury to worsen. Accordingly, the key question is when Toro became or should have become aware "of the development of a pre-existing problem into a more serious condition." *See Augustine,* 704 F.2d at 1078.

■ The Government contends that, under the *Augustine* standard, the limitations period began to run when Toro became aware that she had a serious injury. Reply at 4. The Government argues that, since Toro was classified as 100 percent disabled in 1992, she clearly knew the serious nature of her injury, and that her claim accrued, at the latest, at that point. *Id.* However, mere knowledge that one's condition has become serious does not necessarily start the running of the statute of limitations. *McGraw v. United States,* 281 F.3d 997 (9th Cir.2002), *as amended by* 298 F.3d 754 (9th Cir.2002). A plaintiff asserting a failure-to-diagnose claim "must know or have reason to know of a pre-existing condition before the accrual clock begins to run." *Id.* at 1003.[2]

The Ninth Circuit has rejected the argument that "mere knowledge of a worsening medical condition would put the plaintiff on constructive notice that he had a pre-existing condition" that had worsened over time from mistreatment. *Id.* at 1002. In *McGraw,* Kenneth Place, a veteran, was told in 1994 that a suspicious lump in his lungs was harmless. In August 1996, he learned that he in fact suffered from ter-

---

**2.** The Ninth Circuit reasoned that any other rule would make it "virtually impossible for a plaintiff to assert such a theory when the doctor's negligence is perhaps the most wanton: a failure to inform the patient about the existence of a condition that should be treated

immediately or monitored vigilantly in the future." *Id.* Toro's allegation is precisely that she had a condition that required immediate treatment, and the failure to provide proper immediate treatment led to permanent harm.

minal cancer. He died shortly thereafter. Reviewing his medical records in 1997, his family discovered the 1994 misdiagnosis and realized that Place had died from the spread of a pre-existing tumor. In October 1998, slightly more than two years after learning that Place was seriously ill, Place's daughter filed an FTCA claim. The Government argued that the knowledge, gained in 1996, that Place was seriously ill had started the limitations period. The Ninth Circuit disagreed, concluding that the daughter had no reason to know until 1997 that a pre-existing condition had worsened because of a misdiagnosis in 1994. *Id.*

█ What Toro alleges, if true, makes this case very much like *McGraw.* Toro alleges that the misdiagnosed pre-existing condition is the organic brain injury she suffered in a 1977 car crash. She claims that she did not become aware that her brain had been injured in the 1977 accident until 1999. Pl.Ex. C ¶ 10–13. Clearly, by 1991, Toro knew that she suffered from an organic brain injury. *Id.* ¶ 9. However, a VA doctor allegedly led her to believe that she received this injury in the 1986 car accident. *Id.* This last circumstance makes this case an even stronger candidate than *McGraw* was for starting the limitations period with the discovery of the misdiagnosis of the pre-existing condition.

The Government says that Toro's own use of the word "misdiagnosis" as early as 1992 demonstrates that she was aware that different initial treatment could have produced a more favorable outcome. Reply at 10. Toro did say in 1992 that she had been "misdiagnosed for many years," Def. Ex. 5 at 9, and she was clearly aware by 1992 that she may have been injured by a misdiagnosis relating to the 1986 accident.

However, while Toro knew of the 1986 injury and misdiagnosis, she could not necessarily be said to have had knowledge of the 1977 injury and misdiagnosis, which any 1986 misdiagnosis might have aggravated. There is some evidence indicating that the 1977 accident may have been the primary cause of her injuries. Dr. Burszstajn says there are "substantial medical records and corroborative data consistent with Ms. Toro sustaining a brain injury as a result of her 1977 automobile accident with a *potential exacerbation* post a 1986 accident." Pl.Ex. G at 4 (emphasis added). Toro also presented evidence from Dr. Patricia Jungfer, a private psychiatrist, that the majority of the damage from delay would have occurred in the first twelve to eighteen months after the injury. Pl.Ex. F.[3] The root cause of Toro's injuries thus may have been the 1977 accident and subsequent mistreatment of her 1977 injury, of which she claims to have been ignorant until 1999.

Even if Toro's condition worsened soon after the initial misdiagnosis, the key moment under *Augustine* is when Toro became or should have become aware that a pre-existing condition had worsened. *Augustine,* 704 F.2d at 1078. The specific point at which Toro's injury became irreversible is not critical.[4]

Toro's situation is unlike that in *Fernandez v. United States,* 673 F.2d 269, 271 (9th Cir.1982), in which the Ninth Circuit held

---

**3.** Dr. Jungfer's report does not specify whether the injuries to which she refers derived from the 1977 or 1986 accidents. Her report's emphasis on treatment before 1986 may suggest that she was referring to care after the 1977 accident.

**4.** For example, a plaintiff's failure-to-diagnose claim in a cancer case accrues not when the cancer becomes incurable, but rather when the patient becomes aware that he had a pre-existing condition that, if treated properly, could have been ameliorated. *See McGraw,* 281 F.3d at 1002–03.

that the plaintiffs could have known that earlier treatment might have mitigated the injuries in issue. The plaintiffs in *Fernandez* claimed that doctors had failed to diagnosis their child with jaundice. According to the plaintiffs, by the time the condition was properly diagnosed and treatment provided, permanent damage had been done. Examining when the claim accrued, the Ninth Circuit concluded that the parents "not only knew of the injury" early on, but also could have known "exactly when it was treated" from a simple inquiry. *Id.* The only thing the parents may not have known until later was that doctors may have been negligent in not diagnosing jaundice earlier. Mere lack of knowledge that a party is at fault for an injury does not prevent a claim from accruing. *See Herrera–Diaz v. United States*, 845 F.2d 1534 (9th Cir.1988).

Toro, by contrast, allegedly lacked knowledge not only about whether doctors may have been at fault, but also about the 1977 injury itself. She says she learned of the 1977 injury only in 1999. Her delay in realizing this was allegedly the result of misdiagnosis and improper treatment. The Government does not establish the absence of a genuine issue of fact as to whether she had the "means of knowing" that the injury derived from the 1977 accident.

Arguably, the discovery in 1991 of the organic brain injury could have led Toro to investigate further and discover the 1977 injury earlier. However, a "person suffering from an illness should not be forced during a time of such emotional distress to conduct a hasty fishing expedition for a later date." *McGraw*, 281 F.3d at 1002. This court draws inferences in Toro's favor on this motion. Toro arguably had no reason to know of a pre-existing condition that had worsened in the period after 1977. Therefore, her possible injury in the 1986 accident does not defeat her claims based on the 1977 accident.

### B. Toro's PTSD Claim is Not Time–Barred.

It is uncontroverted that Toro was unaware that she suffered from PTSD until she was diagnosed in 1999. Because Toro did not know until 1999 that her initial treatment may have caused her PTSD, her claim with respect to her PTSD did not accrue prior to 1999. *See Simmons v. United States*, 805 F.2d 1363 (9th Cir.1986).

In *Simmons*, a psychiatrist had a sexual relationship with a patient. The plaintiff in *Simmons* was immediately aware of the emotional pain she suffered, but she did not have "knowledge of the fact that the mishandling of her ... [care] had caused her psychological damage" until another doctor later informed her she suffered from PTSD. *Id.* at 1367. The Ninth Circuit held that her claim accrued only when she gained that knowledge. *Id.*

Similarly, Toro had no way of knowing that her mistreatment allegedly caused her PTSD until, at the earliest, she was diagnosed in 1999. Her PTSD claim did not accrue until that point and is therefore not time-barred. *See id.*

Toro's PTSD is not a "new symptom from an old act of negligence" that revives a "cause of action that was previously time-barred," as claimed by the Government. Reply at 14. Toro has other claims that are not time-barred, and pursuit of her PTSD claim is consistent with prosecution of those other claims.

### C. Toro's Claim for Negligent Dermabrasion Surgery Is Dismissed For Failure to Exhaust Administrative Remedies.

The one claim that does fail for failure to exhaust administrative remedies

concerns an allegedly negligent dermabrasion. The requirement of an administrative claim is jurisdictional and must be adhered to strictly. *Brady v. United States,* 211 F.3d 499, 502 (9th Cir.2000).

An administrative claim gives an agency sufficient information to determine whether an administrative evaluation or settlement that might avoid litigation is possible. *Jerves v. United States,* 966 F.2d 517, 520 (9th Cir.1992). The administrative claim requirement is not burdensome. The person injured

> need only file a brief notice or statement with the relevant federal agency containing a general description of the time, place, cause and general nature of the injury and the amount of compensation demanded.

*Goodman v. United States,* 298 F.3d 1048, 1055 (9th Cir.2002). The Government argues that Toro has not met even this light burden with respect to her claim that a dermabrasion was negligently performed. The court, having found no evidence that a dermabrasion claim was ever presented to the VA, agrees with the Government on this point.

The only purported administrative claim Toro can point to on this subject is her letter to the VA dated December 8, 2000. Toro says this letter amended her complaint to the administrative agency to include the dermabrasion claim. Opp'n. at 18. That letter was a response to the VA's disability rating decision. The letter requested that the VA consider "all corrective surgeries, plastic, incontinence & pelvic pain (due to adhesions, etc.)." Pl.Ex. I at 7 (internal parenthesis original).

It is not at all clear that this letter amended Toro's administrative claim. The letter dealt with the VA's rating decision, not Toro's administrative claim. The letter went to a VA official wholly unconnected to Toro's administrative claim. There is no evidence that any VA employee involved with the administrative complaint ever saw the letter, much less had reason to think that it amended the administrative complaint. Absent notice of the purported amendment, the agency could not consider it in a manner that would have been consistent with the very purpose of the administrative claim requirement.[5]

Even if the letter could serve as an amendment to the administrative complaint, the letter's reference to "all corrective surgeries" was not sufficiently clear to provide notice that a dermabrasion was being placed at issue. The reference in the same sentence to "incontinence & pelvic pain" suggests that the corrective surgery referred to was the hysterectomy, rather than facial injuries never mentioned before. This oblique reference does not give the "time, place, cause and general nature of the injury" required by law. *Goodman,* 298 F.3d at 1055.

### VI. *Venue in the District of Hawaii is Proper*

 Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought if it is in the interests of justice and convenient for the parties and witnesses.[6] *See Lung v.*

---

**5.** Though *Goodman* speaks of notice with the "relevant federal agency," a letter sent to any official in the VA cannot serve as notice, when that official has no connection to the administrative claim.

**6.** This statute partially displaces the common law doctrine of forum non conveniens. *Mira-*

*cle,* 87 F.Supp.2d at 1073. While the relevant factors to consider are the same, the district court has broader discretion to transfer under § 1404(a) than under the forum non conveniens doctrine. *Lung v. Yachts Int'l, Ltd.,* 980 F.Supp. 1362, 1370 (D.Haw.1997).

*Yachts Int'l, Ltd.,* 980 F.Supp. 1362, 1370 (D.Haw.1997).

However, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Miracle v. N.Y.P. Holdings, Inc.,* 87 F.Supp.2d 1060, 1073 (D.Haw.2000). While seeking transfer back to Florida, the Government fails to make the required strong showing.

If this case consisted only of claims relating to Toro's treatment in Florida, transfer might be appropriate. However, as Toro's other claims remain pending, any litigation will have to accommodate witnesses and evidence from numerous jurisdictions. Florida is not the obvious choice for venue, and the record does not show that the convenience of the witnesses and parties militates in favor of transfer. Finally, a transfer would create unnecessary delay in this proceeding. Under the circumstances, transfer is not justified.

## VI. *Conclusion*

For the reasons stated above, the motion to dismiss is DENIED except with respect to Toro's dermabrasion claim, which is dismissed. The request for transfer is DENIED.

IT IS SO ORDERED.