# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2025

Lyle W. Cayce
Clerk

No. 25-20069

Scottie Levias; Ursella Levias,

*Plaintiffs—Appellants*,

*versus*

United States of America,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-3164

Before King, Jones, and Wilson, *Circuit Judges*.

Per Curiam:[*]

The issue before us is whether Scottie and Ursella Levias timely exhausted their administrative remedies before suing the United States under the Federal Tort Claims Act (FTCA) for injuries allegedly caused by malpractice at a Veterans Administration (VA) medical center; and if not, whether the claim can nonetheless be saved. The district court dismissed the action, concluding that the Leviases' 2023 amended claim was untimely and

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-20069

did not relate back to their initial 2021 claim. For the following reasons, we AFFIRM.

## I.

For over a decade, providers at the Michael E. DeBakey VA Medical Center treated Scottie Levias for various ailments, including chronic pain, depression, coronary artery disease, hypertension, diabetes, and hyperlipidemia.

Scottie was diagnosed with chronic renal disease in March 2017. By February 2020, his condition had declined to stage IV chronic kidney disease, and continued to deteriorate from there to stage V. On April 7, 2021, Ursella told the VA she was "disappointed in the care" her husband had received, and specifically mentioned how the non-steroidal anti-inflammatory drugs (NSAIDs) were making Scottie's kidney function worse. Scottie alleges that his kidney disease was caused by the VA's overprescription of renally-toxic NSAIDs.

As his kidney condition worsened, he was still struggling to manage his chronic back pain. In May 2018, a VA provider ordered an MRI, which revealed cauda-equina syndrome (a type of spinal compression). During this visit, Scottie complained of urinary "hesitancy, nocturia, and [incontinence]," symptoms associated with both cauda-equina syndrome and kidney disease. Despite the MRI results, Scottie did not undergo surgery to treat the spinal compression until early 2019 and then again in late 2020.

The Leviases filed an administrative claim with the Department of Veterans Affairs in January 2021.[1] The claim alleged medical malpractice for the VA's "fail[ure] to timely perform emergency lumbar decompression

---

[1] Scottie's wife, Ursella, also alleges she has sustained injuries from the VA's alleged negligence.

surgery" after the May 2018 MRI revealed cauda-equina syndrome, which the Leviases contended "resulted in permanent injuries including severe back pain, bilateral foot drop, ambulatory impairment and bowel and bladder incontinence." The VA denied that claim in January 2023. The Leviases sought reconsideration and filed a new claim, which they called an "amendment," on July 12, 2023. In their amended administrative claim, they reframed their theory:  VA clinicians' long-term failure to manage kidney disease and prescription of nephrotoxic drugs caused independent renal injury leading to total renal failure. In March 2024, the VA issued final denials of both the spinal-compression claim and the renal-failure claim, concluding that the latter was barred by the two-year statute of limitations. Five months later, in August 2024, the Leviases filed suit under the FTCA in the Southern District of Texas to further pursue their renal-failure claim.

The Government moved to dismiss, and the district court granted the motion, concluding that (1) the new renal-failure theory did not relate back to the 2021 spinal-compression claim and (2) any such renal-failure claim accrued no later than 2020, making the 2023 amended claim untimely.

## II.

The issue here is whether the Leviases timely presented their FTCA medical-malpractice claim for renal treatment, and if not, whether it can be saved through relation back to the 2021 spinal-compression claim or the continuous-treatment doctrine.

The FTCA requires a claimant to present his claim to the appropriate federal agency before bringing an action against the United States. 28 U.S.C. § 2675(a). And the claim must be presented to the agency "within two years after [it] accrues" or else it will "be forever barred." 28 U.S.C. § 2401(b).

Here, the Leviases presented their renal-failure claim in July 2023; therefore, the claim must have accrued within the preceding two years to be

timely. At oral argument, when explicitly asked *when* the Leviases knew of the connection between Scottie's kidney failure and NSAID use, Leviases' counsel responded, "April of 2021," when Ursella told the VA she was concerned that the NSAIDs were worsening Scottie's kidney function. Assuming that date as true,[2] we find that the renal claim was asserted outside the two-year statute of limitations and is time-barred, unless it can be saved through relation back or the continuous-treatment doctrine. We address each in turn.

## A.

The Leviases assert that "[t]he amended administrative claim relates back to the first claim because it alleges medical malpractice in the same time frame, at the same Houston VA, and pertained to the same [urinary] symptoms . . . , as well as the failure to diagnose and treat [Scottie]'s urinary symptoms."

We have said that if investigation of the original claim "should have revealed theories of liability other than those specifically enumerated therein,

---

[2] The parties debated the accrual date in the district court. In its motion to dismiss, the Government argued that the Leviases' renal failure claim accrued in 2017 or early 2018, because that is when they learned Scottie had been "diagnosed with acute kidney injury and stage III chronic kidney disease, referred him to the renal clinic, discontinued his use of NSAIDs, and stopped his Metformin because of his abnormal renal function." At the very latest, the government contended, the Leviases knew or should have known of the renal claim by November 2020, because that is when they obtained a subset of Scottie's records pertaining to his renal treatment, procedures, labs, and medications. In response, the Leviases asserted that the statute of limitations began to run in April of 2021 at the earliest. The district court determined that the Leviases' claim accrued in August 2020, when Scottie complained via telephone to the VA about the lack of treatment for his renal failure.

We assume, without deciding, that the claim accrued in April 2021 because it is the latest date offered and it was offered by the plaintiffs during oral argument, yet it is still outside the statute of limitations. Therefore, the crux of this case rests on whether the untimely claim can be saved.

those theories can properly be considered part of the claim." *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980). "[T]he purpose of the FTCA's notice-of-claim requirement 'will be served as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant.'" *Pleasant v. U.S. ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 449 (5th Cir. 2014) (citation omitted). So, for an amended claim to relate back to the original claim, the original claim must have included facts sufficient to reveal theories of liability contained in the amended claim.

To support their relate-back position, the Leviases rely on *Rise* as "the seminal Fifth Circuit case," which they frame as standing for a broad constructive-notice principle:  once a claimant gives the agency enough facts to trigger a reasonable investigation, the Government is charged with knowledge of virtually *any* theory that investigation should have uncovered.

Although *Rise* allows an amended theory to relate back when the agency's "investigation should have revealed" that theory, *Rise*, 630 F.2d at 1071, we have never treated that phrase as a mandate for open-ended investigation only tangentially related to the facts actually presented. Rather, our precedents extend constructive notice only to claims that follow from the same facts or sequence of events as the original claim—not to any claim that might incidentally be uncovered in an investigation of the claim alleged. *See Frantz v. United States*, 29 F.3d 222, 224–25 (5th Cir. 1994).

Take *Rise*. There, Johanna Rise was admitted to an army hospital for a series of fainting spells. *Id.* at 1069. Over the next half year, she was given a battery of diagnostic tests, which ultimately revealed an internal bleeding that the army hospital was not equipped to treat. *Id.* at 1069–70. Consequently, she was transferred to a civilian hospital, where she underwent surgery but died. *Id.* at 1070. Her husband filed an administrative claim, asserting

No. 25-20069

"negligence of Army physicians in failing to diagnose and treat Mrs. Rise in December 1972 and January 1973[,] caus[ing] her death." *Id.* Mr. Rise then brought his claim to federal court and amended his complaint to add a new theory of liability—that the Army's referral of Mrs. Rise to a civilian hospital and its failure to supervise her treatment there was negligent. We held that his new claim regarding Mrs. Rise's transfer sufficiently related back to his original claim of negligent treatment and diagnosis. *Id.* at 1072. Noting that the administrative claim mentioned the transfer, we reasoned the transfer was "part of the *chain of events* that culminated in Mrs. Rise's death." *Id.* at 1071 (emphasis added). Indeed, between the initial attempts to diagnose and treat Mrs. Rise at the Army hospital and Mrs. Rise's death was her transfer to the civilian hospital; thus, the claim of negligence for the transfer followed from the same sequence of events as the original claim of negligent treatment and diagnosis.

Similarly, in *Frantz*, we found sufficient relation back because the new claim arose from the same sequence of events as the original claim. *See* 29 F.3d at 224–25. The plaintiffs there, husband and wife, initially alleged that negligence during the husband's nasal surgery caused him permanent blindness. *Id.* at 223–24. After the VA denied that administrative claim, they brought suit in federal court, where they added a new claim—that the government failed to obtain informed consent prior to the surgery that caused the blindness. *Id.* at 223. We held that "the government's investigation of the administrative claim should have revealed the possibility of an informed consent claim." *Id.* at 224. Like the transfer in *Rise*, the lack of informed consent of the risks of surgery lay on the same chain of events as the original claim.

Conversely, in *Portillo v. United States*, we saw no relation back. No. 93-8275, 1994 WL 395174, at *4 (5th Cir. 1994, June 30, 1994) (per curiam) (unpublished). There, the original claim was for urological injuries allegedly

6

suffered as a result of an Army medical center's failure to monitor the plaintiff after an ankle surgery. *Id.* The new claim, on the other hand, was for alleged negligent administration of anesthesia resulting in spinal injury and diabetes. *Id.* To be sure, the surgery and the recovery were in a single chain of events, and anesthesia was a part of the surgery. But the anesthesia and alleged resulting spinal injury and diabetes did not follow from the same sequence of events as the original claim. While the government *may* have incidentally uncovered an issue with the anesthesia, it was not reasonable—based on the original claim—to expect the government to have investigated further to determine if it resulted in any un-complained of injury.

The Leviases' case is like *Portillo*; their initial claim focused on allegedly delayed back surgery that resulted in "permanent injuries including severe back pain, bilateral foot drop, ambulatory impairment and bowel and bladder incontinence." By framing their initial claim as such, the Leviases gave the Government facts and a sequence of events to follow and investigate, on which lay the back MRI, delayed surgery, and various injuries. The new renal-failure claim's only connection to that original claim is a *shared* injury—bowel and bladder incontinence. There is no reasonable basis for the VA to divine from the original claim that Scottie suffered from an un-complained of injury to his kidneys and investigate its cause. While the connection between NSAID overprescription, Scottie's kidney deterioration, and the urinary issues lay within the medical records, this new claim did not follow from the same sequence of events as the original claim—it was orthogonal, *i.e.*, an incidental claim that may have been uncovered in the investigation. Therefore, the Government cannot be considered on notice of it. Expecting the government to be on notice of any possible claim in an individual's medical records or tangentially related to the facts presented in the original claim reads our precedent too broadly.

No. 25-20069

And thus, the 2021 submission failed to provide "facts sufficient to enable [the VA] thoroughly to investigate its potential liability and conduct settlement negotiations" for kidney failure. *See Pleasant*, 764 F.3d at 449. The 2023 claim instead introduced a new claim of renal failure and therefore does not relate back to the original claim.[3]

## B.

The continuous-treatment doctrine[4] provides that "where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the FTCA cause of action arose, the statute of limitations may be tolled under certain circumstances until the end of the course of treatment," *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir. 1988).

The Leviases argue that the Fifth Circuit has adopted the continuous-treatment doctrine, citing to *Beech v. United States*, 345 F.2d 872, 874 (5th Cir. 1965), and that it should apply to save their claim because, according to Scottie, the VA continued to prescribe him NSAIDs into 2024.

However, subsequent Fifth Circuit cases have read *Beech* as consistent with *United States v. Kubrick*, 444 U.S. 111, 113 (1979)—that accrual turns on

---

[3] The Leviases also argue that "as soon as [they] presented their first administrative claim on January 26, 2021 for medical malpractice at the Houston VA regarding [Scottie's] urinary incontinence and bladder problems," the "statute of limitations was tolled." As support for their assertion that the statute of limitations is tolled upon filing of an administrative claim, they cite out-of-circuit cases.

We read the Leviases' argument to be that the renal-failure claim was tolled when they presented their spinal-compression claim because it was within the scope of the VA's investigation. However, because we have determined that the spinal-compression investigation would not reasonably encompass the renal-failure claim, the tolling argument fails.

[4] Courts sometimes also refer to this as the "continuing" treatment doctrine. *See, e.g.*, *Madrid v. United States*, No. 3:22-cv-0982, 2023 WL 8435244, at *5 (N.D. Tex. Dec. 5, 2023), *appeal dismissed*, No. 24-10568, 2024 WL 5265307 (5th Cir. July 12, 2024).

when the plaintiff knows or should know of the injury and its cause, not when treatment ends. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 191 (5th Cir. 2011) (citing *Beech*, 345 F.2d at 874) ("[C]laim accrual under the FTCA is based on awareness of the injury, not when the alleged conduct ends."), *abrogated on other grounds by United States v. Wong*, 575 U.S. 402 (2015). Accordingly, the Leviases' argument that we have adopted the continuous-treatment doctrine does not comport with our caselaw; rather, we have yet to decide whether to adopt it.[5]

Additionally, as the Government points out, even in circuits that have adopted the continuous-treatment doctrine, courts have held that the limitations period should not be tolled where the record shows that the claimant knew of the factual predicate underlying his claims before treatment ended—as is the case here. *See Outman v. United States*, 890 F.2d 1050, 1053 (9th Cir. 1989) ("[T]his court held that the continuous-treatment doctrine was not available to toll the statute of limitations in medical malpractice cases under the FTCA where the plaintiff knows of the acts constituting the negligence."); *McCoy v. United States*, 264 F.3d 792, 795 (8th Cir. 2001) (same). So, even assuming the Fifth Circuit has already adopted the continuous-treatment doctrine, it would not toll the limitations here because the Leviases knew of the alleged negligent treatment leading to Scottie's kidney failure by April of 2021. Therefore, the statute of limitations started running at that point, and the continuous-treatment doctrine would not make their renal-failure claim timely.

---

[5] As the district courts in this circuit have recognized, "[a]lthough several circuits have adopted the continuous treatment doctrine, it does not appear that the Fifth Circuit has yet addressed whether this doctrine applies to equitably toll the statute of limitations for FTCA claims." *Madrid*, 2023 WL 8435244, at *5 n.11.

No. 25-20069

## III.

The Leviases' brought their 2023 renal-failure claim after the two-year statute of limitations had expired and its untimely nature could not be remedied. The 2023 renal-failure claim did not relate back to their initial 2021 spinal-compression claim because that initial claim neither encompassed nor reasonably put the VA on notice of the latter renal-failure theory. Further, we have not decided whether to adopt the continuous-treatment doctrine, but even if we had adopted it, the theory would not apply here. Accordingly, we AFFIRM the judgment of the district court.